UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BRYAN MORIN, ET AL. | * | CIVIL ACTION NO. 11-45 |
| Plaintiffs | * | |
| | * | JUDGE: JOLIVETTE BROWN |
| VERSUS | * | MAGISTRATE: KNOWLES |
| | * | |
| CHEVRON USA, INC., ET AL. | * | SECTION "G"3 |
| Defendants | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS
AND ADVERSE INFERENCE**

Plaintiffs, Bryan Morin, et. al., respectfully Request this Honorable Court impose sanctions upon Chevron U.S.A. for failure to produce documents, failure to timely identify and produce corporate representatives, and failure to comply with this Courts orders.

**Facts**

**I.      Chevron Failed to produce documents as ordered by this court.**

In May and August of  2011, Plaintiffs first requested Chevron's and Gulf Oil Co.'s documents concerning the following:

(1) Material Safety Data Sheets for gasoline, crude oil, fuel oil, naphtha, toluene, and xylene for the Chevron Oronite plant and Gulf Alliance Refinery from 1982 to 1983.

(2) Contracts between Chevron or Gulf Oil Co. and Oil Mop Gulf Services., Inc

(3) Chevron's and Gulf Oils' health and safety documents concerning the health effects of benzene.

Chevron produced little responsive information, only a few MSDS most of which were not for the

relevant time period.  Plaintiffs held a discovery conference in October, 2011 and served a subpoena duces tecum for records and the deposition of a records custodian.  In response Chevron filed a Motion to Quash which came for hearing before this Court.  The subpoenas were quashed on the issue of time only.

Plaintiffs followed up with specific requests for additional documents, including the Material Safety Data Sheets (MSDS) for 1982 and 1983 and a request to produce a limited number of health and safety documents specifically identified by Chevron in a prior litigations.[1]  This database listing identified 136  documents concerning the health effects of benzene between 1963 and 1983.[2]  Chevron refused to produce these documents, claiming this Court's order permitted them to delay producing relevant discovery until the end of November 2011.[3]  However, even now at the end of January, Chevron has not produced these health and safety documents, nor has it produced other documents responsive to the subpoena and this Court's January 4, 2011 Order.

On December 9, 2011 Chevron did supplement its discovery requests.  It produced several hundred pages of MSDS for "Lube Oil additive" for 1985 and later; a tank listing of approximately 20 pages; and 1986 - 1987 documents concerning a company called Gulf South Hyrdo Blasting. [4] In Summary, Chevron produced over 1000 pages of documents that were not responsive to Plaintiffs' requested discovery.

Plaintiffs again filed a Motion to Compel documents identified in the Subpoena and to produce corporate representatives.[5]   Prior to the hearing, Counsel for both parties agreed to certain limitations upon the documents and requested deposition topics.[6]  The remaining issues came before this Court on January 4, 2012.  At that time, this Court ordered Chevron to produce

---

[1] Subpoenas, **Exhibit 1**
[2] Id.
[3] E-mail, November 7, 2011 & November 11, 2011, **Exhibit 2**
[4] Chevron's December 9, 2011 Supplemental discovery, **Exhibit 3**
[5] Rec. Doc. 79
[6] E-mail December 31, 2011, **Exhibit 4**

the documents in response to the subpoena, subject to the limitations identified by the court.[7]

   **As of January 30, 2012, Chevron has not produced documents in response to those subjects on the subpoena it advised were not objectionable, nor has produced the documents in response to this Court's orders.**   To the extent Chevron withdrew its objections, production of those documents in accordance with the subpoena were due, as was Court Ordered production.

   On January 18, 2012 Chevron's counsel advised that their costs for searching for the responsive documents would be approximately $188,000.00 (this estimate did not include copy costs), and verbally sought Plaintiffs' agreement to pay for such exorbitant costs **prior to** Chevron's search and production of documents.[8]   Review of the e-mail sent by Chevron, demonstrates that as of two weeks after this Court's order the production of documents, Chevron still had not identified or produced a single responsive document.[9]   Counsel contacted this Court for a conference, and  this Court reminded counsel that (1) it had ordered the production of these documents, (2) no issue of costs was raised in the Motion to Quash, or in response to the Motion to Compel, and (3) Plaintiffs' needed these documents prior to the corporate records depositions.

   Approximately a week later on January, 23, 2012, Chevron's counsel advised Plaintiffs that it would be unable to produce the documents prior to the records custodian deposition on January 27, 2012, and sought a further delay of the records custodian deposition.[10]

   In the meantime, Chevron has sought and received a continuance of the trial set for February 27, 2012 until March 12, 2012, with a continuation of the discovery cut off until February 15, 2012.  After conference with this Court, Plaintiffs agreed to continue the deposition of the records custodian to February 8, 2011.

   Unfortunately, even if the documents are produced today, Plaintiffs will still suffer

---

[7] Rec. Doc 110.
[8] Email, January 18, 2012, **Exhibit 5**
[9] Id.
[10] Letter, January 23, 2012, **Exhibit 6**

considerable prejudice as a result of Chevron's delay.  Plaintiffs did not have the requested documents available for the three corporate representatives which have already been deposed: Michael Cowles, Henry McDermott, and Aaron Williams.  The designated deposition topics for these individuals included Material Safety Data sheets (or information Material Information Bulletins) for gasoline, crude oil, fuel oil, toluene, xylene and naphtha;  Oak Point and Alliance safety procedures, whether warnings were provided for benzene containing chemicals, and training or warnings provided to contract workers.[11] Plaintiffs' had no opportunity to review the relevant corporate document prior to these three depositions and were unable to question these individuals concerning any information contained in these documents, or to inquire whether these documents were available to the contract workers at the facility from 1982 and 1983.

Further, prior to January 9, 2012, Chevron identified January 30, through February 3, as available dates for the Chevron's 30(b)(6) representative for toxicology.[12] The toxicologist deposition has been set for February 3, 2012.

Even if produced today, Plaintiffs' counsel would have insufficient time to review the health and safety information in time to prepare for the deposition of the corporate representative for toxicology and epidemiology.   Plaintiffs' efforts to depose Chevron's corporate representative will be compromised by the failure to have Chevron's health and safety documents in sufficient time for review.

Additionally, Chevron's inability to produce these relevant documents it raises the question of whether its corporate representative can be adequately prepared to respond to the deposition topics.  Since the deposition topics closely follow the topics of the subpoena and discovery requests, logic dictates that Chevron's corporate representative cannot be adequately prepared to give **knowledgeable** answers to the requested subjects when the relevant documents

---

[11] Subpoenas, **Exhibit 1**
[12] Email, January 9, **Exhibit 7**

are not available.  Plaintiffs will not be able to adequately questions the 30(b)(6) representatives knowledge of these subjects.

### A.  Chevron has withheld relevant documents

Chevron acted with similar delay tactics in the productions of documents in *Jennifer Woodhouse, et al, v Sunoco, Inc (R&M), et al*, Court of Common Pleas, Philadelphia County, July Term, 2010, No. 3557.  The *Woodhouse* case concerns the allegations of a tank cleaner at the Gulf Girard Point Refinery in Philadelphia. The Court in *Woodhouse* ordered Chevron to produce documents in response to a Motion to Compel. Chevron just recently produced the document in the *Woodehouse* case, even though the trial of that matter is set for April of 2012.  In response, Chevron has produced documents that are also relevant in the case at bar.  Chevron produced a document titled *Case Review of Lymphatic Cancer Deaths at the Chevron USA Richmond and El Segundo Refineries*, which notes an excess of lymphatic tissue cancers (this would include Multiple Myeloma) at the Richmond facility.[13]  Of these,   11 of the workers died from Multiple Myeloma (IDC9 code 203 prior to 1981). Chevron also produced the following documents in *Woodhouse* which are relevant to the case at bar.

1)      CHV WOOD 000067 – 136: S.S. Gulfpride Benzene and Health/Respiratory Protection Training Seminar, April 27, 1979 – acknowledges that benzene causes leukemia. Contains some air monitoring for benzene barges. Training materials. Reference to legal opinion regarding liability/responsibility for contractor exposures.[14]

2)      CHV WOOD 000183 – 193: April 9, 1959 Memo "Accident Prevention and Medical Program for 1343 Benzene Unit and Benzene-Toluene Storage and Shipment" From J.O. Timms to Beetle, E.E., et al. – Benzene as toxic to blood. Need for pre-employment and periodic medical monitoring of blood and urine . Dermal absorption. Carcinogens and Carcinogens in Synfuels[15]

3)      CHV WOOD 000194 – 196: Proposed for Operators Manual – Health Hazards and Their

---

[13] Case Review of Lymphatic Cancer Deaths at the Chevron USA Richmond and El Segundo Refineries, **Exhibit 8**
[14] **Exhibit 9**
[15] **Exhibit 10**

Control– chronic illness, respiratory protection, medical monitoring[16]

4)      CHV WOOD 000636 – 647: Industrial Safety & Health Handbook, Copyright 1952 by The Manufacturers Directory – toxicity of vapors, "dangers of benzol and its derivatives have been widely publicized and even legislated against", insidious nature of health hazards, worker individual susceptibility, "acts mainly on the marrow of the bones to upset the normal blood composition and function"[17]

6)      CHV WOOD 000662 – 679: OSHA Transmittal of "Guidelines for Control of Occupational Exposure to Benzene" dated January 4, 1977 – In August 1976 NIOSH announced that conclusively established that benzene is leukemogenic.[18]

7)      CHV WOOD 000936 – 939: August 27, 1969 letter re "Gulf Oil Co. – U.S. Sulfolene Process Unit P-9228" from United Oil Products Process Division to D.R. Hoyer, Project Manager, Gulf Oil Co. – health hazards of aromatics and enclosing (1) MCA SD-2 "Properties and Essential Information for Safe Handling and Use of Benzene", (2) Data Sheet D-204 "Xylene and Toluene" by NSC, (3) Data Sheet D-308 "Benzene" by NSC, (4) API Toxicological Review – Benzene 1960, (5) "Health Hazards from Aromatic Hydrocarbons" by Dr. Lynn Wilson.[19]

8)      CHV WOOD 000966 – 970: September 20, 1976 letter from M.K. Seggerman to J.P. Noel, Jr. encl. "Benzene Safety Notice" from Shell which includes a Benzene "Cancer Suspect" warning, toxicity statement, dermal absorption and a Gulf "Overexposure May Cause Cancer"[20]

A review of these documents shows many contain bates numbers with the prefix "SIM" in addition to the "CHV WOOOD" prefix, indicating **these documents were produced in a previous litigation.** Aging, this demonstrates that Chevron's claims that the requested documents are not readily available are incorrect.

Not only are these documents relevant to the outstanding discovery requests in this case, but their production in the Pennsylvania and a previous litigation demonstrates that Chevron's claims that responsive documents are unavailable or difficult to locate are disingenuous.

The same issue arises with the database listing of Chevron documents that Plaintiffs requested in this case.  Chevron originally produced this database listing in B*arrois v. Fireman's Fund, et al,.* E.D. La., NO. 09-0380 Section R(3).[21] These documents, although identified in

_____

[16] **Exhibit 11**
[17] **Exhibit 12**
[18] **Exhibit 13**
[19] **Exhibit 14**
[20] **Exhibit 15**
[21] See Exhibit A-1 to the subpoena, **Exhibit 1**

*Barrois*, were not produced during the litigation.   Each of these documents are also identified with a unique numerical identifier, indicating that Chevron has previously identified and located these documents, as would be necessary to create the database.   Therefore claims that these documents are unavailable are disingenuous.

Plaintiffs have located a deposition of a Chevron Corporate representative in *Patrick Rivers v. International Matex Tank Terminal, et. al*.[22]   In this deposition Chevron's 30(b)(6) testimony indicated that (1) Chevron was able to produce Gulf Oil MSDS sheets for as early as 1977 (2) Chevron produced 11 boxes of Gulf oil and benzene related documents (3) Chevron maintains a searchable toxicology library that contains toxicological literature and studies,  and (4) the toxicology group at Chevron maintains a files "running history" of the MSDS and their changes.[23]   This contradicts Chevron's assertions that it does not have ready access to the requested documents.

Chevron has deliberately delayed production of relevant and available documents resulting in severe prejudice to Plaintiff's ability to present their case a trial.

## II.    Failure to identify and produce corporate representatives

Chevron has failed to identify and provide corporate representatives for all the requested topics, as ordered by this court. Plaintiffs made numerous efforts to secure corporate depositions dates, to which Chevron has provided deceptive or incomplete response.   On November 18, 2012, Plaintiffs provided a draft of the deposition notice containing the topics at issue and requested deposition dates.[24] Chevron has still not offered witnesses for all of the topics requested. Additionally, some of the corporate representative were not offered until after January 9, 2012.

This issue was raised in Plaintiffs' Motion to Compel, which was heard by this Court on

---

[22] Deposition Patrick W. Beatty, Rivers v. International Matex Tank terminal, et al. 29 JDC, LA, No 61, 641 (10/13/1998), **Exhibit 16**
[23] *Deposition Patrick W. Beatty, Rivers v. International Matex Tank terminal, et al*. 29 JDC, LA, No 61, 641 (10/13/1998), at 29:10-21,  37:24 -38:2,  31:-10-14,  32:19-24,  34:2-3,  33:17:-20, **Exhibit 16**
[24] Email, November 18 & 21, 2011, **Exhibit 17**

January 4, 2011.[25]   At that time, based on the representations of Chevron's counsel, dates had been provided for the following corporate representatives:  **Aaron Williams** (for Gulf Alliance refinery), **Michael Cowels** and **Henry McDermott** (for Chevron Oronite Oak Point). Additionally dates had been provided for an unnamed toxicologist.  Chevron has declined to specify the topics of these witnesses on more than a general basis until the beginning of the depositions. During the hearing,  Plaintiffs requested that Chevron be required to provide dates of all previously unaddressed topics, including the corporate records custodian.  During the hearing this Court ordered defendants to provide dates for corporate representatives within 5 days, although the later written entry only specified providing dates for corporate records custodian.[26]

On January 26, 2012, Plaintiffs' counsel received an e-mail with the subject line *"Another Chevron Corporate witness"*  containing the following:

"Chevron is offering Steve Earl as corporate representative as available for deposition on February 2, 13, 14, 2012 on the following topics of testimony:

1. The identity of any and all individuals most knowledgeable regarding the chemicals and substances located at the Chevron Oronite Oak Point Plant during the years 1982 through 1983, including but not limited to chemicals used, stored, manufactured, transported and produced at the Plant.
2. The names of any employees that worked with or supervised Mr. Bryan Morin or any Oil Mop Gulf Services, Inc. also referred to as Oil Mop employees.
3. The identity of any and all supervisors of contract laborers at the Oronite Oak Point Refinery from 1982-1983.
4. Information concerning any and all tests or studies conducted or funded by Chevron pertaining to the amount of benzene that is present in any benzene containing substance used, manufactured, produced or distributed at the Chevron Oronite Oakpoint Refinery from prior to and through the end of 1983.
5. When did Chevron first issue or post warning signs for products containing benzene that were used, manufactured, distributed or produced at the Chevron Oronite Oak Point facility.
6. Identity of the industry organizations to which Chevron was a member, and the year they began membership in these organizations.
7. Chevron's knowledge of the benzene concentration of fuel oil, xylene, naphtha, toluene, gasoline, and crude oil.

---

[25] Rec. Doc. 79, Rec. Doc. 98
[26] Rec Doc. 110

I believe these are numbers 5, 9, 10, 12, 14,  and 16 in the previous notice/SDT."[27]

This e-mail raises several issues of concern. First, corporate witnesses should have been provided by January 9, 2012.  Second, Michael Cowles was previously offered for email item no 7 (Topic 16 - benzene content of gasoline, fuel oil, crude oil, naphtha, toluene and xylene), and Henry McDermott was already designated for email items 4, 6, and 7(Topics  - 12 warnings). Third, Plaintiffs' were previously advised that several of these subjects would be addresses by the toxicologist offered for between Jan 30 and Feb 3, 2011. Finally, the subjects concerning identification of individuals with knowledge and supervisors are listed in Plaintiffs' topics for records custodian.[28]

In response to Chevron's addition of yet another corporate representative, Plaintiffs' declined to take Mr. Steve Earl's deposition at this time, but reserved any rights and remedies to which Plaintiffs may be entitled.[29]   Additionally, Plaintiffs requested specific confirmation of the deposition dates of the 30(b)(6) representatives Dr. Allison Stock and Katherine Kraft.[30]    In response to Plaintiffs "reservations of rights" Chevron has attempted to **<u>unilaterally cancel the depositions of Dr. Stock, Dr. Kraft, and all remaining fact witnesses</u>**.[31] Such actions are unwarranted and inappropriate.  Plaintiffs reserve the right to seek additional sanctions if Chevron proceeds with its efforts to unilaterally cancel the deposition of Dr. Stock, Dr. Kraft's and the remaining fact witnesses.

Not only is the late identification and production of witnesses in violation of this Court's orders, it appears Chevron is designating corporate witnesses which may change or alter the testimony previously provided by its other Corporate witnesses.  This continual addition of new

---

[27] Email January 26, 2012, **Exhibit 18**
[28] Subpoena, **Exhibit 1**
[29] See letters of January 30, 2012 and January 26, 2012, **Exhibit 26, in globo.**
[30] Id.
[31] Id.

deponents is improper as well as harassing by requiring Plaintiffs to conduct numerous and duplicative depositions just prior to the trial.

Chevron offered January 30th thorugh February 3rd for their toxicologist.  However, recently Plaintiffs were notified that this toxicologist would not be speaking on all relevant topics for both Chevron and Gulf.[32]  A second toxicologist Kathrin Kraft has just recently been offered for February 7, 2012.  Correspondence on the issue of whether Katherine Kraft is a 30(b)(6) or a fact witness still leaves this issue unclear.[33]

It now appears that Chevron will be offering three corporate representatives for the issues of toxicology, one of which has yet to be identified.[34] Counsel for Chevron first notified Plaintiffs' counsel on January 26, 2012 that there would be two 30(b)(6) toxicology representatives, once for each facility.[35]  Dr. Stock would not be offered for all topics as to Gulf.[36]  Therefore, it appears Chevron has still failed to provide a toxicologist to address these subjects for Gulf Oil.

Chevron has responded to Plaintiffs' concerns by arguing that they are not obligated to *identify* the corporate representative, and had no obligation to provide dates for the deponents other than the records custodian.  Not only did this Court order Chevron to provide dates, Rule 30(b)(6) requires the *identification* of the corporate witness.

**Under the Federal Rules of Civil Procedure, Corporations have an obligation to designate a knowledgeable corporate representative.** The court in *Perry v. Modern Hometech, Inc.,* held: "Rule 37 sanctions are imposed not only to prevent unfair prejudice to the litigants but also to insure the integrity of the discovery process." [37]

Courts have held "that compliance with Fed.R.Civ.P. 30(b)(6) places the burden of

---

[32] Email January 25, 2011**, Exhibit 19**
[33] Emails, January 25-27, **Exhibit 19**
[34] Emails, January 25-27, **Exhibit 19**
[35] Emails, January 25-27, **Exhibit 19**
[36] Emails, January 25-27, **Exhibit 19**
[37] *Perry v. Modern Hometech, Inc.,* 607CV-1755-ORL-19KRS, 2009 WL 1140121 (M.D. Fla. Apr. 28, 2009) citing *Aztec Steel Co. v. Fla. Steel Corp.,* 691 F.2d 480, 482 (11th Cir.1982).

identifying a responsive witness on the corporation."[38]   Surprisingly, in the case at bar, Chevron has argued that it had no responsibility to *identify* the corporation's witnesses.

If the agent designated by the corporation "is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all."[39]  A corporation cannot avoid answering questions by producing a representative lacking corporate knowledge.[40]

The Court in *Starlight Intern. Inc. v. Herlihy*, held the foremost purpose of Rule 30(b)(6) "is to curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it."[41]

Once a deposition notice has been made pursuant to Rule 30(b)(6) specifying the topics for examination: the corporation  must (1) "produce such number of persons as will satisfy the request" and (2) "prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation."[42]  Rule 30(b)(6) "*implicitly requires the designated representative to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition.*"[43]

---

[38] *Voyeur Dorm, L.C. v. City of Tampa, Florida*  2000 WL 34248401, 1.(M.D.Fla.,2000); *Resolution Trust Corp. v. Southern Union Co., Inc.,* 985 F.2d 196, 197 (5th Cir.1993).

[39] *Id.*

[40] *Id.*

[41] *Starlight Intern. Inc. v. Herlihy*,  186 F.R.D. 626, 638 -639 (D.Kan.,1999) citing  *Rainey v. American Forest & Paper Ass'n,* 26 F.Supp.2d 82, 95 (D.D.C.1998) (quoting Fed.R.Civ.P. 30(b)(6) advisory committee notes (1970 amend.)) "For a Rule 30(b)(6) deposition to operate effectively, the deposing party must designate the areas of inquiry with reasonable particularity, and the corporation must designate and adequately prepare witnesses to address these matters." *United States v. Taylor,* 166 F.R.D. 356, 360 (M.D.N.C.), *aff'd,* 166 F.R.D. 367 (1996).

[42] *United States v. Taylor,* 166 F.R.D. 356, 362 (M.D.N.C.), *aff'd,* 166 F.R.D. 367 (1996)  citing *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.,* No. Civ.A. 94-2395-GTV, 1995 WL 625962, at 13 (D.Kan. Oct. 5, 1995) (quoting *Marker v. Union Fidelity Life Ins. Co.,* 125 F.R.D. 121, 126 (M.D.N.C.1989)).

[43] *Starlight Intern. Inc. v. Herlihy*,  186 F.R.D. 626, 638 -639 (D.Kan.,1999) citing *United States v. Taylor,* 166 F.R.D. 356, 362 (M.D.N.C.), *aff'd,* 166 F.R.D. 367 (1996).

A party may be sanctioned for failure to appear for a deposition under Rule 30(b)(6), after being served with the proper notice. "Producing an unprepared witness is tantamount to a failure to appear at a deposition."[44]

In *Nelson v. Matrix Group Int'l, Inc.,* a party failed to designate a corporate representative as ordered and failed to comply with the court's order to complete discovery. The court considered and rejected lesser sanctions for the Defendant's "repeated, intentional and inexcusable failures to comply with several Court orders .... Plaintiff is unduly prejudiced by Defendant's eve-of-trial maneuvering. Defendant had ample opportunity to rehabilitate itself but chose to keep the Plaintiff and this Court waiting for Defendant's compliance. Continuous delays and inexcusable failures to obey Court orders constitute extreme abuse of the judicial process."[45] The Court struck Defendants Answer, Defenses and Counterclaims, and granted the Plaintiffs leave to move for a default judgment.

In *SPSL OPOBO Liberia, Inc. v. Mar. Worldwide Services, Inc.,* Judge Lemele held the guidelines under FRCP 37 favored dismissal where (1) SPSL ignored the Court's order compelling it to produce it corporate representative for depositions (2) SPSL was aware that their conduct violated the court order (3) SPSL's continued non-compliance was severely prejudicial to all party movants; and (4) "no other sanction would adequately remedy the prejudice which moving parties suffered due to" SPSL' non-compliance.[46]

---

[44] *Id.*

[45] *Nelson v. Matrix Group Int'l, Inc.,* CIVA08-3934 B5, 2010 WL 936455 (E.D. La. Mar. 12, 2010); *See* Fed.R.Civ.P. 37(b)(2); *Donovan v. Road Rangers Country Junction, Inc.,* 736 F.2d 1004, 1005 (5th Cir.1984) (per curiam); *K.M.A. Inc. v. Gen. Motors Acceptance Corp.,* 652 F.2d 398, 399 (5th Cir.1981).

[46] *SPSL OPOBO Liberia, Inc. v. Mar. Worldwide Services, Inc., CIV.*A. 07-3355, 2010 WL 3720721 (E.D. La. Sept. 15, 2010) *reconsideration denied,* CIV.A. 07-3355, 2010 WL 3909165 (E.D. La. Sept. 28, 2010) and *aff'd sub nom. SPSL Opobo Liberia, Inc. v. Marine Worldwide Services, Inc.,* 10-31082, 2011 WL 6217786 (5th Cir. Dec. 14, 2011) See also, *Bonaventure v. Butler,* 593 F.2d 625 (5th Cir.1979); *Kabbe v. Rotan Mosle, Inc.,* 725 F.2d 1083 (5th Cir.1985)(affirming the dismissal of the plaintiff's complaint where the plaintiff ignored the Court's order to attend a deposition by a court-made deadline); *McDonald v. Bellsouth Telecommunications, Inc.,* 130 Fed. Appx. 685 (5th Cir.2005) (affirming the dismissal of plaintiff's complaint for her noncompliance with the court's order); *Technical Chemical Co. v. IG-LO*

Sanctions are appropriate where a corporate defendant fails to make a good faith effort to comply with Rule 30(b)(6).[47]

The original discovery deadline in this case was December 9, 2012.  Even with the extension of the deadline to February 15, 2012, there are still numerous witnesses to be deposed. Chevron has continually delayed and failed to fulfill its obligations under Rule 30(b)(6).

### III.    Failure to disclose witness information in accordance with the scheduling order and Rule 26

Plaintiffs' initial discovery request in May (Chevron) and August (Gulf Oil) of 2011 requested the identification of persons with knowledge and witnesses.[48]   No witnesses were identified by Chevron.  Later, on November 18, 2012, Plaintiffs' requested supplementation of these discovery responses concerning persons with knowledge and witnesses. (See Interrogatories Numbers 5, 6, 7, 8, 13, and 16 on the attached Interrogatories to Chevron USA and Gulf Oil)[49] Chevron responded that it had no information to supplement.[50]

Yet shortly thereafter, on December 9, 2011, Chevron identified the following witnesses for the first time:

1. **Katherine Kraft**, toxicologist employed by Chevron.
2. **Edward Turner**, former division manager of Oil Mop Gulf Services Inc.
3. **Kenneth Barnshaw "Shaw" Thompson, III**, former President of Oil Mop Gulf Services Inc.
4. **Richard Meerman**, maintenance employee at Oronite.
5. **Roger T. Kinney**, retired Oronite safety engineer from 1982-1983.
6. **William Walker**, Safety and Security Supervisor at Oronite. 10285 Highway 23 South, Belle Chasse, LA 70037.

---

*Products Corp.,* 812 F.2d 222 (5th Cir.1987) (affirming the dismissal of the plaintiff's complaint for failure to appear for a court-ordered deposition).

[47] *Rahman v. The Smith & Wollensky Rest. Group, Inc.,* 06 CIV. 6198LAKJCF, 2009 WL 773344 (S.D.N.Y. Mar. 18, 2009) *See, e.g., Black Horse Lane Associates v. Dow Chemical Corp.,* 228 F.3d 275, 304 (3d Cir.2000) (affirming sanction when deponent "failed to offer meaningful testimony about most, if not all, of the items specified in the notice of deposition"); *Resolution Trust Corp. v. Southern Union Co.,* 985 F.2d 196, 197-98 (5th Cir.1993) (affirming sanctions when corporation failed to make "meaningful effort" to designate witness with any relevant knowledge).

[48] Plaintiffs' Discovery Requests, **Exhibit 20**

[49] Email, November 18 &21, 2012, **Exhibit 21**

[50] Email, November 18 &21, 2012, **Exhibit 21**

7. **Robert T. Cheng**, retired Chevron employee
8. **Gail Hunting**, senior staff at Chevron, occupational hygiene.
9. **Michael Richard**, operations manager at Oronite
10. **Henry J. McDermott**, retired industrial hygienist for Chevron.
11. **Aaron D. "Skeets" Williams**, former Director of Health and Safety at the Gulf Oil Corporation Alliance.
12. **Mike Cowles**, Chevron Project Manager. 6001 Bollinger Canyon Road, San Ramon, California.
13. **Blaine Fury**, current Chevron employee, Technical Manager at Oronite.
14. **Albert Weller**, retired Chevron employee.
15. **John Shook**, current Chevron employee.
16. **Michael McDonald**, Chevron Safety Technologist. [51]

Two days later, Chevron added another three previously undisclosed witnesses.

17. **Stephen Cain**- -*retired maintenance engineer at the Alliance refinery*
18. **Ronald Cavalier** – *retired operations supervisor at Alliance Refinery- worked at alliance form 1982 to 1983* (believed to have relevant information concerning the procedures used to ensure safe industrial hygiene practices at the Alliance Refinery between 1982-1983.)
19. **Gary Bowman** – *retired Safety Supervisor at the Alliance Refinery* (believed to have relevant information concerning the procedures used to ensure safe industrial hygiene practices at the Alliance Refinery between 1982-1983.)[52]

The Scheduling Order required parties to provide Rule 26 disclosures, which includes witness identifications, on May 9, 2011.[53] Chevron failed to identify any of these witnesses on its Rule 26 disclosures,[54] and instead waited to identify them on its witness list on December 9 & 11, 2011.

The duty to disclose under Rule 26 **is prior** to using it as evidence in a hearing or a trial.[55] The 19 specific witnesses (including the 3 interviewed by Mr. Spencer) identified in Chevrons Witness list of December 9th, and Supplemental witness lists of December 11th were not disclosed or identified at any time previously:

- These individuals were not disclosed in any Rule 26 disclosures provided by the Defendant

---

[51] Rec. Doc. 59
[52] Rec. Doc. 62-2
[53] Rec. Doc 14
[54] Rec. Doc. 64-5
[55] *Paulsen v. State Farm Ins. Co.*, CIV.A. 06-9546, 2008 WL 449783 (E.D. La. Feb. 15, 2008 [Rec. Doc. Spencer Reply brf])

prior to the deadline to file the witness list on December 9, 2011[56]
- They were not disclosed by Chevron in responses to any interrogatory, including specific interrogatories concerning witnesses and individuals with knowledge.[57]
- They were not disclosed in response to Plaintiffs request to Chevron to supplement its discovery responses concerning witnesses and information with knowledge
- Were not identified bay any party in any discovery whether written or deposition prior to December 9, 2011.[58]

In some instances courts have permitted a party to add one or two non-expert witnesses that were not previously disclosed.  However, this is not one or two – it is 18 witnesses.  **The addition of 18 witnesses prior to trial is prejudicial.** Chevron used these dilatory tactics as a basis for continuing the trial.  Additionally, Plaintiffs' have repeatedly asked Chevron to identify which of these 19 witnesses it will actually call at trial, but as of January 25, 2011 there were still unable to do so for all except four.[59] Chevron's counsel advises the Plaintiffs' to treat the remaining **15 witnesses as "May Call" witnesses**.

These witnesses are **Chevron's current and former employees**, Chevron has advanced no reasonably explanation as to why it could not have searched its records and **identified its own employees** throughout the previous eight months of discovery, or to why it didn't simply call the Oak Point facility to locate potential individuals with knowledge.  Surely if they had made any effort, they could have located at least some of these witnesses prior to December 9, 2011.

### A. Duplicative or Contrary Testimony

The majority of the witnesses identified are purported to offer testimony on subjects already identified by the corporate witnesses.  For example, Ron Cavalier and Albert Weller are proposed to offer testimony on subjects already covered by the Chevron Corporate representative Aaron Williams.  Stephen Cain, Richard Meerman, Michael McDonald, Michael Richard, Roger

---

[56] Rec. Doc 64-5
[57] Rec. Doc 64-4, 64-2
[58] Email, November 18&21, **Exhibit 21**
[59] Email, January 25, 2012, **Exhibit 22**

Kinney, William Walker and Nick Cacuibauda all appear to be designated to the same topics as the Chevron' 30(b)(6) witnesses Michael Cowles and Henry McDermott.   Similarly, to the extent Katherine Kraft is a fact witness; her testimony will duplicate the subjects covered by Chevron's designated corporate representative of toxicology.    Finally, Edward Turner, and Kenneth Thompson are both identified as witnesses for Oil Mop Gulf Services, Inc.

Federal Rule of Evidence 403 permits the exclusion of needless presentation of cumulative evidence.   Chevron's intention to call at least 11 witnesses to offer cumulative testimony is excessive, needless and unrealistic.

To the extent the proposes witness testimony contradicts Chevron's 30(b)(6) testimony, it is inadmissible. In *Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.* the district court ruled to impose sanctions for monetary damages and to exclude Defendant's from "asserting a position and introducing evidence contrary to the position asserted" by the designated corporate representative during his depositions.[60]

For example the Gulf 30(b)(6) representative Aaron Williams testified that oil Mop cleaned tanks and spills, and that "Oil Mops was a pretty major player at that refinery"[61] Now they are offering the testimony of others, such as Ron Caviler, testified ( after several pages of speaking objections and coaching by Chevron's counsel) "I do not remember Oil Mop being inside the refinery during '82, '83.[62]

In *Reilly v. Natwest Markets Group Inc.*, the court excluded testimony of two fact witnesses added to the witness list a few weeks before trial, where these individuals had not been produced in response to the Plaintiff's Rule 30(6)(6) notices.[63]   The court specifically excluded these individuals from testifying on matters that were specified under the Rule 30(b)(6) notice,

---

[60] *Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.*  228 F.3d 275, 301 -304 (C.A.3 (N.J.),2000)
[61] Deposition Aaron Williams (1/2/2012) at 90-91, 100:19-22, **Exhibit 23**
[62] Depositions, Ron Cavalier (1/24/2012) at  25:9 -34:2, **Exhibit  24**
[63] *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 269 (C.A.2 (N.Y.),1999)

explaining that: "... due to what would have been the cumulative nature of their testimony, delaying the trial to allow Reilly to conduct such a deposition would have been wholly unwarranted."[64]

Chevron chose to delay discovery. It chose either not to investigate the information reasonably available to it in a timely manner, or it withheld these 18 names until the last possible minute, in either case it results in unfair prejudice to the Plaintiffs.  These individuals are Chevrons former and current employees – any claims that Chevron was unable to identify its own employees is simply not reasonable.

Judge Africk, in *Paulsen v. State Farm Ins. Co*. Granted the Defendant's Motion to strike all witnesses not disclosed prior to the deadline to file witness lists.  The *Paulsen* case is strikingly similar to the case at bar.  Paulsen did not identify any witnesses in his Rule 26 disclosures, and additionally failed to identify these same witnesses in response to discovery.  He then timely filed a witness list which added numerous new witnesses. Judge Africk held that "because Paulsen failed to supplement his initial disclosures or interrogatory responses, he violated Rule 26(e)." [65] He held, " the introduction of the extensive number of newly disclosed witnesses would prejudice State Farm, which will be unable to depose these witnesses and, **if necessary, retain its own witnesses to rebut the same**." [66] Finally, Judge Africk held "**accordingly, all witnesses not disclosed to State Farm prior to the filing of Paulsen's witness list are stricken and their testimony is excluded from use in the above-captioned matter.**[67]

Chevron's tactic of suddenly naming numerous witnesses on the deadline for filing the final witness lists, and shortly before trial is simply **Trial by Ambush**. The Fifth Circuit has held

---

[64] *Reilly v. Natwest Markets Group Inc*. ,  181 F.3d 253, 269 (C.A.2 (N.Y.),1999)
[65] *Paulsen v. State Farm Ins. Co*., CIV.A. 06-9546, 2008 WL 449783 (E.D. La. Feb. 15, 2008)
[66] *Id*. at *3
[67] *Paulsen v. State Farm Ins. Co*., CIV.A. 06-9546, 2008 WL 449783 (E.D. La. Feb. 15, 2008)

"trial by ambush is not contemplated by the Federal Rules of Civil Procedure." [FRCP][68]  Trial by ambush was abolished by the United States Supreme Court when it adopted the Federal Rules of Civil Procedure in 1938.  FRCP Rule 26 and the accompanying discovery rules ... required both sides to turn over information to each other..."[69]

FRCP 16(e) provides "that a pretrial order shall control the course of the action unless modified by a subsequent order." [70]  Discussing the Federal Rules of Civil Procedure, the District of New York held:

> They are designed specifically to avoid "trial by ambush." **Under the Rules, parties may not intentionally withhold their most damning evidence until trial, at which point they blindside the opposition**... Instead, parties must share all relevant information with each other well in advance of trial in order to enable each side to fully prepare its legal strategy.[71]

Chevron had a duty to supplement its discovery responses, particularly its Rule 26 disclosures, it failed to do so.  "Under Fed.R.Civ.P. 26(a)(1) and Fed.R.Civ.P. 26(e)(1) a party must provide and supplement disclosures that include the names, addresses, and telephone numbers, if known, of each individual the disclosing party may use to support its claims or defenses."[72] The purpose of both Fed.R.Civ.P. 26(a)(1)(A) and 26(e) is to accelerate the exchange of basic information about the case and to help effectuate the general purpose of all discovery rules that civil actions no longer need to be carried on in the dark."[73]  **The "sanction of exclusion**

---

[68] *Woods on Behalf of Woods v. Int'l Harvester Co., Inc.,* 697 F.2d 635, 639 (5th Cir. 1983)

[69] *Henley v. FMC Corp.,* 189 F.R.D. 340, 350 (S.D.W. Va. 1999) citing Lawrence J. Fox *et al., Historical Preface,* 67 Fordham L.Rev. 691, 692 (1998)(quoted authority and footnotes omitted).

[70] *S.E.C. v. U.S. Envtl., Inc.,* 94 CIV.6608 (PKL)(AJ, 2002 WL 31357809 (S.D.N.Y. Oct. 17, 2002).

[71] *Casilla v. New York State Dept. of Labor,* 04 CIV. 6694 (NRB), 2005 WL 3502050 (S.D.N.Y. Dec. 21, 2005)( emphasis added)

[72] *In re FedEx Ground Package Sys., Inc., Employment Practices Litig.,* 3:05-MD-527 RM, 2007 WL 2128164 (N.D. Ind. July 23, 2007) citing *Schagenhauf v. Holder,* 379 U.S. 104, 114-15 (1964); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 756 F.2d 230, 236 (2d. Cir.1985); *Fitz, Inc. v. Ralph Wilson Plastics Co.,* 174 F.R.D. 587, 589 (D.N.J.1997).

[73] *In re FedEx Ground Package Sys., Inc., Employment Practices Litig.,* 3:05-MD-527 RM, 2007 WL 2128164 (N.D. Ind. July 23, 2007) citing *Schagenhauf v. Holder,* 379 U.S. 104, 114-15 (1964); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 756 F.2d 230, 236 (2d. Cir.1985); *Fitz, Inc. v. Ralph Wilson Plastics Co.,* 174 F.R.D. 587, 589 (D.N.J.1997).

is '**automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless.**'[74]

The Northern District of Indiana held:

As discussed earlier, the purpose of disclosure under Rule 26 is to have open, not hidden, discovery. ***Long gone are the days of litigation by ambush where key witnesses or critical information is sprung on the opponent at the last moment, too late to respond, counter or learn the details of the information***.[75]

Yet, this is precisely what Chevron has done in this case, it sprung 19 witnesses on the Plaintiffs on the date of the Final Witness Lists.  Chevron has used these additional witnesses and outstanding discovery as a basis to continue this trial.

Chevron has argued that it was unable to identify individuals prior to the date to file the witness lists.[76]  This is certainly questionable, considering that Chevron's industrial hygienist relied on interviews of Michael Cowels, Albert Weller, and Aaron "Skeets" Williams in preparing his report, which was also submitted on December 9, 2011.[77]

Chevron's last minute additions have also compounded the problems caused by Chevron's delay in offering its expert witnesses and corporate representative for depositions.  The only days Chevron made available for its expert depositions were those shortly before the original discovery deadline (Dr. Mundt – 1/5/2012; Dr. Pyatt 1/6/2012; John Spencer 1/4/2012, Dr. Natelson 1/9/2012).  Additionally, its originally designated corporate representative were not offered until just before the discovery cut off (Michael Cowels – 1/3/2012; Henry McDermott 1/3/2012; and Aaron Williams - 1/2/2012).  Finally, even though Chevron had the identity of Mr. Morin's' physicians since May of 2011, it waited to request their depositions until December. (this includes

---

[74] *Id.*  (emphasis added)

[75] *In re FedEx Ground Package Sys., Inc., Employment Practices Litig.,* 3:05-MD-527 RM, 2007 WL 2128164 (N.D. Ind. July 23, 2007) citing *See U.S. v. Loggins,* 486 F.3d 977, 987 (7th Cir.2007) ("Trial by ambush has absolutely nothing to recommend itself to the judicial process."); *Hodgdon v. Northwestern Univ.,* 2007 WL 15746486 at 3 (N.D.Ill.2007); *see generally* 8 Wright, Miller & Marcus, Federal Practice & Procedure: Civil 2d § 2001 (1994).

[76] Reply to Opposition to Supplement its witness list, Rec. Doc.  73

[77] See Expert Report of Mr. John Spencer, Rec. Doc. 95-3

the deposition of Dr. Jones and Dr. Cole who have not treated Mr. Morin since he moved to Virginia.)

**B. Chevron has withheld the identify of former employees who would have knowledge relevant to Mr. Morin's allegations.**

**C.**

Finally, Plaintiffs have recently learned that Chevron has failed to identify individuals with potentially relevant knowledge of the claims at bar, in spite of Plaintiffs' repeated discovery requests. Plaintiffs just learned, that in a 2007 litigation concerning exposure at the Oak Point Plant between 1984 and 1987, *Tessitore, et al, v Chevron Oronite Co., LLC,* Chevron identified the following individuals:

1. **O.A. (Art) Kubale, <u>Plant Manager</u>** for the Chevron Oronite facility form <u>July 1982</u> to September 1986.
2. **Ted Henken**, Maintenance Superintendent from <u>February 1982</u> to January 1988.
3. **Normal Gauthreaux,** Maintenance foreman from <u>July 1981</u> to Aril 1998
4. **T.C. Goodwyne**, Maintenance Foreman from <u>July 1981</u> to September 1992,
5. **Paul Harrison**, **Supervisor of Environmental, Health and Protection** from <u>November 1982</u> to January 1988.
6. **Harold Bufford**, Operations Supervisor from <u>December 1982</u> to August 1984,
7. **Larry Shanks,** Operations Manager from <u>April 1981</u> to April 1985.[78]

**Chevron failed to identify these individual in response to Plaintiffs' discovery requests.** These individuals were in management positions during the time of Mr. Morin's exposure.  It seems impossible to believe that the **Plant Manager** and the **Supervisor of Environmental, Health and Protection during 1982 and 1983 would not have information relevant to the case and Plaintiffs discovery requests.**  Further the same attorneys with Kean Miller, LLP were counsel of record for Chevron *in Tessitore, et al, v Chevron Oronite Co., LLC* and the case at bar.

Chevron's withholding the identity of these individuals is an egregious failure to comply with discovery obligations.  Court have had held: "Discovery sanctions, including an adverse

---

[78] Discovery responses in *Tessitore, et al, v Chevron Oronite Co., LLC,* attached as **Exhibit 25**

inference instruction, may be imposed upon a party that has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence."[79]

### IV.     Sanction are appropriate

Courts have imposed sanction for similar delays, failure to produce discovery, and failure to obey the Court's orders.  In *Residential Funding Corp. v. DeGeorge Fin. Corp.,* the district court faced a similar failure to produce documents. The Court held that:

> (1) where, as here, the **nature of the alleged breach of a discovery obligation is the non-production of evidence, a District Court has broad discretion in fashioning an appropriate sanction**, including the discretion to delay the start of a trial (at the expense of the party that breached its obligation), to declare a mistrial if trial has already commenced, or to proceed with a trial with an adverse inference instruction; (2) **discovery sanctions, including an adverse inference instruction, may be imposed where a party has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence**; (3) a judge's finding that a party acted with gross negligence or in bad faith with respect to discovery obligations is ordinarily sufficient to support a finding that the missing or destroyed evidence would have been harmful to that party, even if the destruction or unavailability of the evidence was not caused by the acts constituting bad faith or gross negligence...[80]

The Court in *Residential* noted it was not a typical adverse inference case where documents had been destroyed; the offending party in *Residential* delayed in responding to discovery and did not produced the requested documents in time for trial.

> In reference to the failure to obey a discovery order the court held:
>
> Rule 37(b)(2) of the Federal Rules of Civil Procedure provides, in relevant part, that if a party fails to obey a discovery order, the court "may make such orders in regard to the failure as are just," including, but not limited to, "[a]n order that ... designated facts shall be taken as established for the purposes of the action in accordance with the claim of the party obtaining the order." ... Rule 37(b) also provides that, in lieu of or in addition to any other appropriate order, the court *shall* require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure,...

---

[79] *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 113 (2d Cir. 2002)
[80] *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 101 (2d Cir. 2002)

> ... Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs. [81]

Rule 16(f) provides for the imposition of various sanctions for violations of scheduling and other pretrial Orders of the court. The Rule states:

> (f) Sanctions. If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or his own initiative, may make such orders with regard thereto as are just and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D).[4]

For the violation of a Rule 16 Order, a district court may order the dismissal of a claim and the payment of the opposing party's expenses, including attorney's fees.[5]

Rule 16 incorporates Rule 37 by reference and makes "explicit the district court's discretionary power to control the expeditious disposition of docketed cases, a power long-recognized by appellate courts"[82]

After repeated discovery abuses and orders for sanctions the court in *Maxey v. Gen. Motors Corp.,* held:

> Of course, the simple imposition of monetary sanctions is not this court's only option. This court may incarcerate the defendant's corporate representatives or its counsel for civil contempt, strike parts of the defendant's pleadings in this cause or even enter judgment against it on the plaintiff's claims...[83]

Additionally, Chevron has improperly multiplied the proceedings by (1) identifying numerous witnesses first the first time on its December 9 & 11, 2011 witness lists, (2) improperly delaying in producing documents, and (3) delaying in identification and production of corporate

---

[81] *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 106-07 (2d Cir. 2002) citing *DLC Management Corp. v. Town of Hyde Park,* 163 F.3d 124, 135-36 (2d Cir.1998). *See generally Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'") (quoting *United States v. Hudson,* 7 Cranch 32, 34, 3 L.Ed. 259 (1812)).
[82] *Lomax v. City of New Orleans*, CIV.A. 04-0461, 2005 WL 712438 (E.D. La. Mar. 15, 2005)
[83] *Maxey v. Gen. Motors Corp.,* CIV.A.3:95CV006-D-A, 1997 WL 88214 (N.D. Miss. Jan. 10, 1997)

witnesses.  As such, Chevron is subject to satisfaction of the excess costs, expenses and attorney's fees resulting from such conduct. 28 U.S.C. §1927 provides:

§ 1927. Counsel's liability for excessive costs

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.[84]

Chevron has designated at least eleven (11) facts witnesses to offer testimony on the same topics as its numerous 30(6)(6) witnesses. (see discussion above, page 14-16) Thereby forcing Plaintiffs to prepare for and to take numerous unnecessary depositions of individuals that will not likely be called at trial.

This Court held in *Recinos-Recinos v. Express Forestry, Inc*.: "A litigant may be obliged to pay his opponent's expenses and fees if he resists or impedes discovery"[85]  In *Recinos-Recinos* critical discovery documents and information was produced late, the  Defendants "continually flouted the orders of this Court and provided evasive, incomplete and, in certain instances, downright deceitful responses."[86]    Defendant's delays resulted in Plaintiffs being unable to conduct depositions of the corporation's crew leaders until they had left the country, causing considerable expense.[87]   This Court found the defendant's subterfuge was sanctionable.[88]

This Court held:

"Courts govern their own affairs. When parties exploit the judicial process, a court may even sanction conduct beyond the reach of other rules. When a party engages in sanctionable conduct, the court may shift the entirety of an aggrieved party's expenses to the offending party.[89]

This Court held that for such discovery abuses the Plaintiffs were entitled to

---

[84] 28 U.S.C. § 1927
[85] *Recinos-Recinos v. Express Forestry, Inc*., CIV.A. 05-1355, 2006 WL 2349459 (E.D. La. Aug. 11, 2006)
[86] *Id.*
[87] *Id.*
[88] *Id.*
[89] *Id.*

reimbursement for costs incurred as sanctions for contempt, as well as reasonable attorney's fees in preparing the Motions for Contempt and discovery.[90]  At this time attorneys for the plaintiffs have expended 39.98 hours in preparing the instant Motion and responding to Defendant's frivolous discovery objections.[91]

Chevron should not be permitted to call redundant witnesses for the topics there corporate representatives have been designated to address.

**V.       Requested sanctions**

Plaintiffs request sanctions in the form of costs, and attorney's fees for the numerous unnecessary witness depositions, and the costs of filing this motion.  At this time Plaintiffs' have not yet received the billing from the deposition for the duplicate witnesses. In fact several of these depositions have yet to be taken.  Plaintiffs request leave to provide documentation of the excess costs of depositions and attorney fees at a later date.

Additionally Plaintiffs' request the following adverse inferences in light of Chevron's failure to produce documents and failure to produce 30(b)(6) representative:

1.  Prior to 1982, Chevron knew that exposure to benzene in gasoline, crude oil, fuel oil, naphtha, toluene and xylene could cause blood diseases and blood cancers including Multiple Myeloma
2. Unproduced Material Safety Data Sheets from 1982 and 1983 for gasoline, crude oil, fuel oil, naphtha, toluene and xylene did not identify or provide any warning concerning the risk of benzene causing blood disorders and blood cancers.
3. Chevron did not provide any warnings to contract workers to place them on notice of the risk of benzene exposure from gasoline, crude oil, fuel oil, naphtha, toluene and xylene.]
4. All other relief as this Court may deem necessary, proper and just.

Finally, Plaintiffs' request Chevron be prohibited from offering testimony contradicting its 30(b)(6) representatives.

Respectfully submitted,

---

[90] *Id.*
[91] See **Exhibit 26, summary of hours.**

L. ERIC WILLIAMS, JR., LSBN 26773
**WILLIAMS LAW OFFICE, LLC**
3000 W. Esplanade Ave.
Metairie, Louisiana  70002
Telephone: (504) 832-9898
Facsimile:   (504) 834-1511
eric@amlbenzene.net

&

*/s/ Amber E. Cisney*
RICHARD J. FERNANDEZ, LSBN 05532
AMBER E. CISNEY, LSBN 28821
**RICHARD J. FERNANDEZ, LLC**
3000 West Esplanade Avenue, Suite 200
Metairie, Louisiana  70002
Telephone: (504) 8348500
Facsimile: (504) 8342609
rick@rjfernandezlaw.com
amber@amlbenzene.net
**ATTORNEY FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing has been served on all known counsel of record in this proceeding by email  or facsimile on this 30th day of January, 2012.


        */s/Amber E. Cisney*