# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BRYAN MORIN, ET AL.** | * | **CIVIL ACTION NO. 11-45** |
| Plaintiffs | * | |
| | * | **JUDGE: JOLIVETTE BROWN** |
| **VERSUS** | * | **MAGISTRATE: KNOWLES** |
| | * | |
| **CHEVRON USA, INC., ET AL.** | * | **SECTION "G"3** |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

Throughout this litigation Chevron has delayed discovery, failed to produce relevant information in response to discovery requests and subpoenas, and failed to identify and provide witnesses within the deadlines established by this Court.[1]

In its reply, Chevron argues that Plaintiffs are attempting to prevent a trial on the merits in this case. However, Chevron's behavior throughout discovery demonstrates that Chevron has no interest in a trial on the merits.

Chevron has failed to identify eighteen (18) witnesses in accordance with the Scheduling Order and Rule 26 disclosures, failed to identify these 18 witnesses in discovery prior to its Final Witness Lists, delayed in producing documents, withheld relevant documents, delayed designating corporate 30(b)(6) representatives, and delayed identifying the topics to which each corporate witness would testify.

Chevron's delays in discovery have resulted in the trial being delayed for **nine (9) months.** Considering that Mr. Morin is suffering from a terminal illness, such delays seem calculated to delay the trial and prevent Mr. Morn from testifying at the trial on this matter.

---

[1] See attached **Discovery Timeline**, **Exhibit 1**

Plaintiffs' will suffer substantial prejudice as a result of Chevron's delays in this matter.

SUMMARY OF DISCOVERY ABUSES

I.     FAILED OR IMPERMISSIBLY DELAYED PRODUCTION OF DOCUMENTS

    a.     CHEVRON FAILED TO PRODUCE 136 RELEVANT HEALTH AND SAFETY DOCUMENTS IDENTIFIED IN A PREVIOUS LITIGATION

Chevron produced a database listing of health and safety documents concerning benzene in B*arrois v. Fireman's Fund, et al,*. E.D. La., NO. 09-0380 Section R(3).[2] In the instant case, Plaintiffs first requested the documents identified on this database listing on October 18, 2011 by subpoena (quashed as to the issue of time), by follow-up verbal and e-mail requests, and by renewed requests in the subpoena re-served in December 2011. Additionally, this Court ordered the production of health and safety documents from 1926 to 1983 on January 4, 2012. [3] These documents have still not been produced by Chevron.

Below is a listing of just a few of the relevant documents not produced:

| | |
|---|---|
| TC77879 | Benzene toxicity: Review of Recent Literature, 17-Feb-1983. |
| TC70803 | Benzene Toxicity: Review of Recent Literature; Indented as a follow-up of the information of "Benzene Toxicity : A critical Review", 3-Feb-1983. |
| TC7724 | Send Report; "A Review and Evaluation of Recent Literature on Ambient Concentrations, Emissions, Modeling and population exposure to Benzene , Toluene, and Xylene:" 25-Jan 1983. |
| TC77309 | "benzene: an experimental multipotential carcinogen"; up-to-date results of long term Bioassays performed at bologna institute of oncology, 1- Sept- 1982. |
| TC27986 | update on task force activities: sending minutes and materials from 820512 meeting ; Raalte. Hg "Haematological, myelotoxic. Clastogenic. Carcinogenic. And leukaemogenic effects of Benzene", 10 –June 1982. |
| TC77848 | "a critical look at hazards from benzene in workplace and community air" article by van Raalte.h.g.s. in regulatory toxicology and pharmacology. Volume 2. Pages 67~76.1982 (full Article in reprints file #2874), 1-Mar-1982. |
| TC77937 | API studies on benzene skin absorption; sending comments after review of these studies; also Percutaneous absorption API studies, 4-Sept.-1981. |

[2] See Exhibit A-1 to the subpoena, Rec. Doc. 145-3
[3] Rec. Doc. 110

| TC77469 | exposure to atmospheric benzene vapor associated with motor gasoline report no. 2181; Synopsis of Concawe report, 17-Mar-1981. |
| TA32140 | chromosome studies in workers exposed to benzene toluene or both, 31-Dec-1971.[4] |

As of February 26, 2012, Chevron has still not produced any of the pre-1984 documents identified on this database.

Ms. Valmores, Chevron's 30(b)(6) record custodian, testified that she was not asked to search for the documents identified in the listing produced in *Barrois*.[5] Ms. Valmores testified that <u>she could have searched for the documents in the listing, but was not asked to do so</u>.[6]

**b. CHEVRON FAILED TO PRODUCE HEALTH AND SAFETY DOCUMENTS**

In Plaintiffs' initial discovery requests, Plaintiffs requested the following health and safety documents:

**Request For Production Of Documents Number: 9 [Discovery to Chevron, May 2, 2011]**
Please produce a copy of all documents pertaining to any warnings of health effects, handling instructions, and recommended personal protective equipment for any benzene containing substances used, produced, and stored by Chevron at the Chevron Oronite Oak Point Plant from 1982 to 1983.

**Request For Production Of Documents Number: 16 [Discovery propounded to Gulf, August 23, 2012][7]**
Please produce a copy of all documents pertaining to any warnings of health effects, handling instructions, and recommended personal protective equipment for any benzene containing substances used, produced, and stored by Gulf Oil at the Alliance Refinery from 1982 to 1983.

Plaintiffs also requested health and safety documents in topics 4, 10, 11, 14, and 28 of the Subpoena Duces Tecum.[8] Additionally, in response to Plaintiffs' Motion to Compel

---

[4] **Rec. Doc. 145-3**
[5] Deposition, Elina Valmores (1/8/2011) at 5, **Exhibit 2.**
[6] Deposition, Elina Valmores (1/8/2011) at 7, **Exhibit 2.**
[7] Rec. Doc. 145-18
[8] Rec. Doc. 145-3

of December 22, 2011, Chevron was ordered to produce health and safety documents, including published documents, from 1926 to 1983. To date, however, few if any documents in response to the subpoena have been produced.

In January 2012, Ms. Valmores, Chevron's records custodian, testified that Chevron's Department of Health, Environment, and Safety maintains a physical library in addition to an electronic database.[9] Ms. Valmores did not search this physical toxicology library for documents in response to Plaintiffs' discovery requests.[10] She was specifically only asked to search the electronic database.[11]

As of October 14, 2011, Chevron had only produced 52 pages of documents on behalf of Chevron. It did not produce any documents responsive to requests directed to Gulf until December 2, 2011, and then only 44 pages. On January 27, 2012 Chevron produced 357 pages of health and safety documents, but **only 20 pages** were documents generated prior to 1983 ( two epidemiological treatises). Chevron produced another 107 documents on the last day of the extended February 15, 2012 discovery cut-off date. The majority of documents were produced well after Chevron's corporate witnesses were deposed and after Chevron's employee fact witnesses were deposed.

Even after this Court ordered production of documents on January 4, 2012, Chevron still sought to delay production. Chevron repeatedly urged Plaintiffs' counsel to agree to stipulate to the content of these unproduced and unknown documents.[12] Further, in spite of this Court's Order to produce documents, Chevron continues to argue its non-compliance is acceptable because Plaintiffs should have agreed to a stipulation. This Court has already

---

[9] Deposition, Elina Valmores (1/8/2012) at 2-3, **Exhibit 2.**
[10] Deposition, Elina Valmores (1/8/2012) at 3-10, **Exhibit 2.**
[11] Deposition, Elina Valmores (1/8/2012) at 10, **Exhibit 2.**
[12] E-mails requesting stipulations, **Exhibit 4**

held that Plaintiffs need not agree to a stipulation. The proposed stipulation concerning Chevron's knowledge of public documents doesn't address the actual content of these documents, and it would provide no information concerning the corporation's internal studies and documents—which it has still failed to produce.

Later, on January 18, 2012, Chevron's counsel indicated that it would require Plaintiffs to agree to the alleged $188,000.00 cost for Chevron to search its documents prior to producing the documents.[13] Chevron has cited no case law to support this request. Whether Chevron admits to the attempts to delay or not, this e-mail demonstrates that more than two weeks after this Court Ordered production of the documents, Chevron had not begun its search for responsive documents.

Many of the documents Chevron has produced in the last two weeks are Material Safety Data Sheets, and other documents dated after 1984. Curiously, Chevron argues production of documents dated after Mr. Morin's dates of exposure puts it in compliance with this Court's Order, even though it specifically maintained its objection to the production of documents dated after 1984. Chevron has only produced a few documents for the 1982 - 1983 time period.

Chevron urges that it conducted a "rolling production" of documents in this case. However, this is not supported by the testimony of its corporate records custodians. Ms. Valmores testified that she did not recall searching for documents until the end of 2011, and could not recall producing documents to corporate counsel until January 2012.[14] Mr. Formoso, Chevron's other records custodian, testified that he did not search for documents in

---

[13] See January 18, 2012 email, Rec. Doc. 145-7.
[14] Deposition, Elina Valmores (1/8/2012) at 8, **Exhibit 2.**

this case until January, 2012.[15] Mr. Formoso described the documents for which he searched as Chevron's 'inactive' facility records.[16] Chevron's delay in searching for responsive documents was not only improper, by certainly challenges Chevron's claims that it desires a trial on the merits.

Chevron urges that Plaintiffs suffered no prejudice from its delays, which is simply untrue. Relevant corporate documents were not available for Plaintiffs' counsel to review prior to these depositions, preventing Plaintiffs from inquiring about the subject matter of these documents.

As a result of Chevron's failure to produce the relevant health and safety documents, as ordered by this Court, Plaintiffs' were required to depose not only Chevron's 30(b)(6) witnesses but also Chevron's employees without the benefit of Chevron's actual corporate documents.

Several of the documents found by the Plaintiffs through other sources are supportive of key elements of Plaintiffs' claims. As a result, Plaintiffs have been prejudiced by Chevron's improper withholding of relevant and admissible evidence in this matter. For example, Chevron's industrial hygienist expert, Mr. Spencer, relied on 28 benzene air monitoring results selected from over 1,700 actual measurements. Mr. Spencer must have reviewed these 1,700 air monitoring reports in order to select 28, yet these documents have never been produced by Chevron in this litigation. (Plaintiffs discovered them through other sources).

### c. CHEVRON FAILED TO PRODUCED MATERIAL SAFETY DATA SHEETS OR MATERIAL INFORMATION BULLETINS

---

[15] Deposition, Michael Formoso (1/8/2012) at 13, **Exhibit 3.**
[16] Deposition, Michael Formoso (1/8/2012) at 16, **Exhibit 3.**

Plaintiffs requested "Material Safety Data Sheets, chemical safety data sheets, warning labels and signs" for the substances which were stored in tanks of any size, barges, tank cars, and rails cars at the Oronite facility and the Alliance refinery from 1982-1983, including but not limited to fuel oils, jet fuels, crude oils, all gasoline (including pyrolysis gasoline), any hydrocarbons, fuel additives, lubricants, cleaning agents, and solvents.[17]

Chevron failed to produce Material Safety Data Sheets (MSDS) or Material Information Bulletins (MIBs) for the 1982 to 1983 time period for Chevron Oronite naphtha, gasoline, xylene, and fuel oil. Chevron also failed to produce any MSDS or MIBs for the Gulf Alliance Refinery from 1982 to 1983 for naphtha, toluene, xylene and fuel oil.

**d.  CHEVRON FAILED TO PRODUCE DOCUMENTS CONCERNING GULF REFINERIES**

After Plaintiffs located numerous documents produced in *Jennifer Woodhouse, et al, v Sunoco, Inc. (R&M), et al*, Court of Common Pleas, Philadelphia County, July Term, 2010, No. 3557, and produced these documents to the Court, Chevron has now produced a few of these documents from the Philadelphia case.    In addition to the eight (8) documents identified in Plaintiffs original Memorandum,[18] Plaintiffs subsequently located additional documents produced in the *Woodhouse* litigation that are responsive to Plaintiffs' discovery requests in this case, yet have not been produced:

> **CHV-WOOD 1502-1509**,   November 12, 1975 letter from Gulf Oil medical Department documenting six cases of lymphoma at the Philadelphia Refinery, and noting benzene exposure in the attached documents. These documents show that at two refineries benzene measurements had exceeded the TLV of 10 ppm.[19]

> **CHV-WOOD 1302–1305**, September 16, 1975, Minutes of Meeting concerning Aromatics (Particularly Benzene), notes NIOSH recommend reducing the permissible exposure limit from 10 ppm to 1 pm, also notes they have studied benzene

---

[17] See Request for Production of Documents No. 3, directed to Gulf Oil on August 23, 2011, Rec.. Doc. 145-18; and directed to Chevron on May 2, 2011, **Exhibit 6.**
[18] *Memorandum In Support Of Motion for Sanctions,* Rec. Doc. 145-2    Pp. 7-8
[19] CHV-WOOD 1502-1509**, Exhibit 7.**

concentrations. (these studies have not been produced). The document notes there is a specific concern expressed by the Medical Department about the exposure of maintenance workers.[20]

Action plan calls for establishing facilities where benzene is present in refinery streams at a level of greater than 1%, and performing mini-environmental impact studies of these locations, starting with the Alliance refinery.

**CHV-WOOD 1510 –1523**, BENZENE AND GOCHEM, A REVIEW, June 1976, discusses the toxicological effects of benzene, and notes that it impairs the hematopoietic or blood forming capacity of the blood, and cancer of the bone marrow. The report notes several areas of potential exposure to benzene at Alliance Refinery, a benzene Environmental and Economic Impact Status Report is being prepared for the Alliance Refinery. The report also notes there are problems with: benzene standard for toluene streams at two Gulf Refineries (Chv Wood 1523), the benzene standard in barges, Complex 5 units at Alliance Refinery (Chv Wood 1523). The benzene standard in barges at Philadelphia, St. James, and Port Arthur (Chv Wood 1523).[21]

**CHV-WOOD 1533-1536**, March 3, 1982, Revision of "Benzene and Health," discusses medical surveillance of benzene workers is conducted at some locations and not others.[22] Notes that there was a specific request for a program concerning benzene at the Alliance Refinery, implying that there was no benzene program in 1982.

Chevron has argued there is no prejudice because Plaintiff's' had already located these documents. This is incorrect. Plaintiffs acquired a few of the documents (those identified in Plaintiffs' Motion for Sanctions) a few days before filing the Motion for Sanctions on January 30, 2012 [Rec. Doc. 145]. Numerous other documents were not acquired until several weeks later. Therefore, contrary to Chevron's position, these documents were not available for most of the corporate and Chevron fact witness depositions. Furthermore, Chevron is not absolved of its obligation to produce documents in this case simply because Plaintiffs have found Chevron documents through other sources.

Chevron, in a status conference with Judge Brown on February 24, 2012, argued that Plaintiffs cannot identify a single document that Chevron has not produced. This is incorrect.

---

[20] CHV-WOOD 1302 – 1305, **Exhibit 8.**
[21] CHV-WOOD 1510 – 1523, **Exhibit 9.**
[22] CHV-WOOD 1533 -1536**, Exhibit 10.**

Plaintiffs' Motion for Sanctions and this memorandum identify numerous documents that have not been produced, including: the documents identified by "CHV-WOOD" bates prefix, and the 136 documents identified on the database listing from Barrois. (attached to the Subpoena duces Tecum). Chevron's argument that Plaintiffs' must find the documents first before Chevron is obligated to produce them is not well founded. Chevron's arguments, if accepted, would effectively eviscerate the Federal Rules of Civil Procedure concerning discovery.

**e.  CHEVRON FAILED TO PRODUCE TESTING DATA , OR DOCUMENTS EVALUATING THE BENZENE CONTENT OF GULF'S PRODUCT STREAMS**

On February 15, 2012 (the last day of discovery), Chevron produced a memorandum dated October 22, 1976, which discuses Gulf's plans to identify product streams at its refineries which contain 1% or more of benzene, Gulf-Morin 000849.[23] This document indicates that data collection concerning the Gulf product streams with greater than 1% benzene would be completed by October 25, 1976. CHV-WOOD 1302 – 1305, discussed above, also confirms this plan to analyze Gulf's product streams.

In the case at bar the Chevron/ Gulf Oil has failed to produce any of the testing data, memorandums or other documentation from its analysis of the benzene content of its product streams.

**f.  OTHER DOCUMENTS NOT PRODUCED IN THIS MATTER**

The November 24, 1976 Memorandum concerning benzene refinery streams was authenticated by Chevron in response to Plaintiffs' Request for Admissions.[24] However, this document demonstrates that Gulf Oil tested each product stream for levels of benzene. Chevron has not produced any records of this testing or evaluation of the benzene content of

---

[23] Gulf-Morin 000849, **Exhibit 11.**
[24] 9/24/1976, memorandum, Bates no. SIM0001498- 1504, **Exhibit 12.**

their products.   Chevron is still withholding this relevant and requested information.

     *In Tessitore, et al, v Chevron Oronite Co., LLC,* a case involving a worker exposed to benzene while cleaning tanks, Chevron produced over 3,000 pages of documents, including 1,300 pages of daily tank logs identifying the substances in each tank for the Chevron Oronite Oak Point Plant from 1984 to 1987.[25]   In the case at bar, despite Plaintiffs' requests for the identification of the products contained in the tanks for 1982 to 1983, no tank logs have been produced.[26]

     Chevron also produced several hundred pages of "Inventory Activity Summary Reports" in *Tessitore* from 1984 through 1987, identifying products purchased at the facility.[27] No similar information has been produced for the 1982 to 1983 period at Oak Point.  From the documents produced in *Tessitore*, it appears Chevron was purchasing these chemicals from suppliers, and no information concerning substances purchased from suppliers has been produced.

     In *Tessitore,* Chevron Oak Point produced contracts with Gulf South Hydro-blast from 1984-1987.  The instant case involves Oil Mop Gulf Services, Inc. between 1982 and 1983, and Chevron has failed to produce any contracts for this time period.   Plaintiffs specifically requested documents and records concerning work performed by Oil Mop at the Alliance Refinery and the Oak Point Facility, which would include contractual agreements.  Plaintiffs' specifically requested contractual agreements in the Subpoena Duces Tecum.[28]  Chevron has not produced a single contractual agreement with Oil Mop, even though its own 30(b)(6) witness, Aaron Williams, testified that Oil Mop was a 'major player' at the Alliance

---

[25] *Tessitore v. Chevron Oronite Co.*, E.D. La., No. 06-4126,  Produced documents were identified with bates numbers CHEV TESS 00001-05078
[26] Sample documents attached, **Exhibit 13**
[27] Chevron Inventory Activity Summary Report, **Exhibit 14.**
[28] Rec. Doc. 145-3, Exhibit 1 Items No. 12 and  15

Refinery, and the Oak Point Plant's Hazardous Waste Management Plan identifies Oil Mop as a contractor.[29]

Plaintiffs' August 25, 2011 Interrogatories, Request for Production of Documents and Requests for Admissions directed to Chevron U.S.A. as Successor in Interest to Gulf Oil Corp. (Request for Production of Document No. 10.) requested: "Produce any and all records concerning work performed by Oil Mop, Inc. and/or its employees at the Alliance Refinery from 1982 to 1983, including but not limited to work-order, invoices, records of payment, maintenance records, and spill reports." [30] This request was renewed as to both the Alliance Refinery and the Oak Point facility in the subpoena, yet Chevron has still not produced a single responsive document to the category.

The October 5, 1984 document "Case Review of Lymphatic Cancer Deaths at the Chevron USA Richmond and El Segundo Refineries" not only identified 11 cases of Multiple Myeloma in maintenance workers between 1956 and 1980, but also cites two previous unpublished Chevron studies:

1). Divine, BJ and Barron V. (1983), Analysis of Mortality by Job and Case-Control Studies of Specific Causes of Death (Unpublished technical report);
2). Environmental Health Associates (1983): Cause –Specific Mortality Among Employees of the Richmond and El Segundo Refinery (Manuscript under preparation).

Chevron has argued this study is not relevant because it was dated after 1983, but Chevron has still failed to produce the two previous studies cited in this report which were within the time of Mr. Morin's exposure.

---

[29] Deposition Aaron Williams, 1/2/2012, at 100, **Exhibit 15**; Chevron Chemical Company Oronite Additives Division for Hazardous  Waste Management, **Exhibit 16**
[30] August 25, 2011, discovery requests, **Rec. Doc. 151-18**

## II.   CHEVRON DELAYED IDENTIFYING KNOWLEDGEABLE INDIVIDUALS AND WITNESSES

### a.   NO CHEVRON, GULF OIL OR OIL MOP EMPLOYEES WERE IDENTIFIED IN CHEVRON'S RULE 26 DISCLOSURES.

The original pre-trial Order in this case **[Rec Doc. 14]** required the parties to exchange Rule 26 disclosures on May 9, 2011.     **Chevron failed to identify a single Chevron, Gulf or Oil Mop employee in its disclosures.**[31] Chevron did not serve supplemental disclosure until after the deadline to file the Witness lists, and has still not provided disclosures for many of the witnesses it identified in its Witness lists.

Eight (8) months later, Chevron identified eighteen (18) previously undisclosed witnesses on its final witness lists.[32] All but two of the eighteen witnesses are current or former Chevron employees. Chevron has failed to provide a believable explanation as to why it could not identify any of its own employees during the previous eight months of discovery. One of these individuals, Dominick Caucibauda, was previously deposed in another case, involving exposure to benzene while tank cleaning at the Chevron Oak Point Plant, and involving the same counsel of record. [33] As noted in the *Memorandum in Support of Plaintiffs' Motion for Sanction*, Courts have found that waiting to disclose it witnesses until filing a final witness list is  not in compliance with the Federal Rules of Civil Procedures.[34]

Chevron has argued that it cannot be sanctioned for failure to identify these eighteen (18) witnesses in its Rule 26 disclosures or discovery.  Chevron has argued that it may only be sanctioned for failure to comply with an Order to granting a Motion to Compel. This is incorrect.  Failure to comply with a Scheduling Order is sanctionable. **Federal Rule of Civil**

---

[31] Chevron's Rule 26 disclosures, **Exhibit 17**
[32] Rec. Doc.  59 and 62-2
[33] Deposition of Dominick Cacibauda, (1/13/2012) at 62-66, **Exhibit 18**
[34] *Memorandum in Support of Plaintiffs' Motion for Sanctions*, [Rec. Doc. 145-2, pp. 17-19, 9-12]

**Procedure 16(f) provides that the court may :**

    **(1) *In General.*** On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney: …fails to obey a scheduling or other pretrial order. [35]

A court may award sanctions, including striking the proposed witnesses, costs and attorneys' fees, pursuant to Fed. R. Civ. P. 26(c)(3), Fed. R. Civ. P. 37(a)(5) and/or the Court's inherent authority. [36]

    a.  CHEVRON FAILED TO IDENTIFY KNOWLEDGEABLE WITNESSES AND EMPLOYEES AT OAK POINT AND ALLIANCE PRIOR TO THE FINAL WITNESS LISTS

    Plaintiffs' propounded the following interrogatories to Chevron ( May 2, 2011) and Gulf' s Alliance Refinery (August 23, 2011):

> **Interrogatory No. 5:**
> Please *identify all persons you or anyone on your behalf interviewed in the course of investigating this lawsuit and resulting injuries*, which are alleged in plaintiffs' petition.
>
> **INTERROGATORY NO. 6:**
> *Please identify by name, address, and telephone number of all individuals most knowledgeable regarding the chemicals and substances located at the Alliance Refinery /Chevron Oronite Oak Point Plant during the years 1981 through 1983, including but not limited to chemicals used, stored, manufactured, transported and produced at the Plant.*
>
> **INTERROGATORY NO. 9:**
> Identify any and all *individuals with knowledge of the safety and/or safety training procedures with regard to contract workers* and non-employee workers at Alliance Refinery/*Chevron Oronite Oak Point Plant* from 1982 through 1983. Please state the name, as well as last known address and phone number.
>
> **INTERROGATORY NO. 10:**

---

[35] Fed. R. Civ. Pro. 16(f)(1)(c)

[36] *See Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (5th Cir. 1985) ("The inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it.").

*Identify any and all co-workers or supervisors of Mr. Bryan Morin.*

**INTERROGATORY NO. 11:**
*Identify any and all supervisors of contract laborers at the Alliance Refinery from* 1981- 1983

Chevron failed to identify a single individual in response to these requests.

b. **CHEVRON FAILED TO SUPPLEMENT ITS DISCOVERY CONCERNING WITNESSES.**

On November 18, 2012, Plaintiffs specifically requested supplementation of these discovery responses concerning persons with knowledge and witnesses.[37] (See Interrogatories Numbers 5, 6, 7, 8, 13, and 16 on the attached Interrogatories to Chevron USA and Gulf Oil)[38] On November 21, 2011, Chevron replied:

 "To date, we have not interviewed any witnesses with information relevant to this case whom have not already been identified in discovery. Accordingly, we have no supplementations to make to the interrogatories to which you requested supplementation."[39]

Less than three weeks later, Chevron filed its witness lists identifying 18 individuals it had not disclosed in discovery or its Rule 26 disclosures.

c. **CHEVRON FAILED TO IDENTIFY PLANT MANAGERS FROM THE 1982 AND 1983 PERIOD FOR OAK POINT – AS IDENTIFIED IN *TESSITORE*.**

In *Tessitore* Chevron identified numerous managers for the Oak Point plant from the 1982 to 1983 period.[40] Chevron failed to identify these managers in the instance case. Chevron's counsel was the same in *Tessitore* as in the case at bar. Thus, making Chevron's argument, that they were unaware of witnesses or individuals with knowledge, quite unbelievable.

---

[37] See e-mail correspondence, **Rec. Doc. 151-19.**
[38] Email, November 18 &21, 2012, **Rec. Doc 151-19**
[39] *Id.*
[40] See Chevron Rule 26 disclosures and discovery responses in *Tessitore,* Rec. Doc.. 151-21

### d. CHEVRON DELAYED IDENTIFYING AND PROVIDING 30(B)(6) WITNESSES

Plaintiffs have been requesting the identification and depositions of Chevron's 30(b)(6) corporate witnesses since November 18, 2011, when the notice of topics were first transmitted to Defendant.[41]  Despite the hearing before this Court and its Order to provide dates by January 9, 2012, Chevron was still adding 30(b)(6) witnesses as late as January 26, 2012.  Chevron failed to inform Plaintiffs' until the last minute that the toxicologist 30(b)(6) deposition scheduled for February 3, 2012 would not address all the remaining subjects, and that another deposition would be needed for another witness on February 7, 2012.  On January 26, 2012, Chevron proposed to add yet another corporate witness to testify to subjects that had already been designated to other witnesses.

Chevron has failed to comply with the Subpoena to produce corporate representatives (to the extent not quashed).  The Federal Rules of Civil Procedure provide:

> **Fed. Rule Civ. Pro. 31**
>  (g) FAILURE TO ATTEND A DEPOSITION OR SERVE A SUBPOENA; EXPENSES.
> A party who, expecting a deposition to be taken, attends in person or by an attorney may recover reasonable expenses for attending, including attorney's fees, if the noticing party failed to:
>     (1) attend and proceed with the deposition; or

> **Fed. Rule Civ. Proc. 45 (e)**

> (e) CONTEMPT. The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena.

The Fifth Circuit affirmed a civil contempt sanction imposing a $1,000 per day fee for non-compliance with a subpoena.  The court found:

> In *United States v. United Mine Workers*,[1] the Supreme Court established the criteria for civil contempt sanctions: the harm from noncompliance, the probable

---

[41] Motion to Compel, Exhibit 4, **Rec. Doc. 76-5.**

effectiveness of the sanction, the financial resources of the contemnor and the burden the sanctions may impose, and the willfulness of the contemnor in disregarding the court's order.[42]

Chevron has deceived this Court and the Plaintiffs regarding its compliance with the Corporate Deposition Notices.  Chevron failed to identify specific topics for each witnesses until immediately before the depositions  (Chevron did not identify specific topics referenced in the subpoenas until either the start of the depositions, or the day before the depositions.)

Accordingly, Chevron is in blatant violation of this Court's Order, the Subpoena, and its obligations under the Federal Rules of Civil Procedure by its inappropriate delays in producing corporate representatives.

### e.  CHEVRON 30(B)(6) WITNESSES WERE UNPREPARED.

Once a deposition notice has been made pursuant to Rule 30(b)(6) specifying the topics for examination the corporation  must (1) "produce such number of persons as will satisfy the request" and (2) "prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation."[43]  Rule 30(b)(6) "_implicitly requires the designated representative to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition._"[44] Instead, Chevron offered series of witnesses which were unable to testify beyond their limited personal knowledge.

A party may be sanctioned for failure to appear for a deposition under Rule 30(b)(6), after being served with the proper notice. "Producing an unprepared witness is tantamount to

---

[42] *In re Grand Jury Subpoena Duces Tecum Issued on April 2 2, 1991 to Records Custodian*, 36 F.3d 90 (5th Cir. 1994)

[43] *United States v. Taylor,* 166 F.R.D. 356, 362 (M.D.N.C.), *aff'd,* 166 F.R.D. 367 (1996)  citing *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.,* No. Civ.A. 94-2395-GTV, 1995 WL 625962, at 13 (D.Kan. Oct. 5, 1995) (quoting *Marker v. Union Fidelity Life Ins. Co.,* 125 F.R.D. 121, 126 (M.D.N.C.1989)).

[44] *Starlight Intern. Inc. v. Herlihy,*  186 F.R.D. 626, 638 -639 (D.Kan.,1999) citing *United States v. Taylor,* 166 F.R.D. 356, 362 (M.D.N.C.), *aff'd,* 166 F.R.D. 367 (1996).

a failure to appear at a deposition."[45]   A court may issue sanctions for such a failure.[46]

Chevron has produced numerous witnesses that were unprepared to testify to the topics designated.

**Aaron Williams**, Gulf Oils 30(b)(6) witness was  designated for the following topics, but unprepared and unable to answer questions on these topics listed on the corporate deposition notice:

> **Topic 4** - Amount of benzene in products at Alliance.[47]
>
> **Topic 8** - Safety or safety training procedures for contract workers at Alliance 1982-83.[48]
>
> **Topic 10** - Identity of supervisors of contract workers at Alliance from 1982-83.[49]
>
> **Topic 16** - Benzene content of fuel oil, toluene, xylene, naphtha at Alliance 1982-1983.[50]

Mr. William's  preparation for the deposition consisted solely of skimming the limited MSDS sheets and few corporate memorandum provided by Chevron's counsel. [51]

**Henry McDermott**  was designated as Chevron's 30(b)(6) to Topics 7,8,12,13,18,20, and 22.[52]

> **Topic 7** - No documentation to evidence contract workers at Oak Point received warning that toluene, xylene, Naphtha, gasoline, and fuel oil contained benzene.[53] He was not aware if Chevron ever warned that benzene could cause Multiple Myeloma.[54]
>
> **Topic 8** – All safety procedures with regard to contract workers at the Oak Point facility.  He had no information on to safety or training procedures for benzene at Oak

---

[45] *Id.*

[46] Id.

[47] Deposition, Aaron William (1/2/2012) at 25-26, **Exhibit 15**

[48] *Id* .at 48-49

[49] *Id* .at 51-52

[50] *Id*. at 85-86

[51] Id. at 12-13

[52] See Deposition Notice, **Rec. Doc. 145-3**

[53] Deposition Henry McDermott (1/3/2012) at 18-19, ***Exhibit 19***

[54] *Id.* at 20-21.

Point from 1982-1983.[55]

**Topic 18** - Chevron's policies or procedures for warnings for benzene containing products (including crude oil, gasoline, naphtha, toluene and fuel oil) from 1982 through 1983. He testified that they used MIBs for warnings, but does not know if there were MIBs for toluene, xylene, naphtha, and fuel oil in 1982-1983 period.[56]

**Michael Cowles,** another of Chevron's 30(b)(6) witnesses for the Oak Point Refinery, was designated for Topics 4 and 6.[57]

**Topic 4** - For the time period 1982-1983, the identify any substance (whether a raw material, product, intermediate product, or byproduct) that was used, produced, transferred, or stored at the Chevron Oronite Oak Point Plant which contained any amount of benzene.

Mr. Cowles' response to questions under this topic was "I don't know that."[58] Additionally, after a few questions on this topic, Chevron's attorney objected that Mr. Cowles wasn't designated to speak to this subject. [59]

> MR. LEVIN: I object. I think this falls under one of the other categories specified that would require the testimony of a chemist or a toxicologist or someone else. But we are not putting forth Mr. Cowles as a corporate representative on those particular issues.
> BY MR. WILLIAMS: Q. You designated him for Topic No. 4 and it says: "Please identify any products at the Point facility which contains any amount of benzene," and I'm asking Mr. Cowles to clarify whether or not toluene, xylene, naphtha, fuel oil or gasoline had any amounts of benzene at the Oak Point facility from 1982 to 83'. [60]

**Topic 6 -** Any and all information concerning the benzene content of the chemicals used and stored at the Chevron Oak Point Refinery from 1982-1983.

Again, Chevron confirmed that Mr. Cowles was designated for topic 6, and then

---

[55] *Id.* at 26-28.
[56] *Id.* at 34-36.
[57] Deposition, Michael Cowles (1/3/2012) at 6, **Exhibit 20**
[58] Deposition, Michael Cowles (1/3/2012) at 31.
[59] Deposition, Michael Cowles (1/3/2012) at 31.
[60] Deposition, Michael Cowles (1/3/2012) at 32

immediately objected that he was not designated to speak to question on the topic:

> Q. Okay. Topic No. 6: "Any and all information concerning the benzene content of the chemicals used and stored at the Chevron Oak Point Refinery from 1982 to 1983." And again, you were designated for Topic 6; 8 correct, sir?
> MR. LEVIN: Yes, he was.
> BY MR. WILLIAMS:
> Q. Okay. And sir, for No. 6, do you have any information as to the benzene content of toluene, xylene, naphtha, fuel oil or gasoline from 1982 to 1983 at the Oak Point Refinery?
> MR. LEVIN: Objection; asked and answered. He's not the corporate representative with respect to the answers you're seeking for those questions.[61]

**Dr. Katherine Kraft** was designated as Chevron's 30(b)(6) representative on toxicology matters, specifically:

> **Topic 2** - Benzene content of xylene, toluene, naphtha, gasoline, fuel oil products at Oak Point.

She was not aware that there was gasoline and fuel oil at Oak Point.[62] She has not seen any documentation of the amount of benzene in these products. [63]

**Dr. Allison Stock,** Epidemiologist was designated as Chevron's 30(b)(6) on Topic 13, epidemiological, toxicology, and other scientific literature concerning the health effects from benzene.[64] She did not search Chevrons files for earlier studies of Multiple Myeloma.[65]

The first study of Chevron employees involving Multiple Myeloma which Dr. Stock is aware of was Dagg 1992.[66] Dr. Stock has never seen the Bailey 1984 study involving Chevron employees with Multiple Myeloma at El Segundo and Richmond.[67] Chevron has not produced studies involving Chevron employees with Multiple Myeloma at El Segundo and Richmond Refinery, although Dr. Stock acknowledged there had been studies by Dr. Bailey,

---

[61] Deposition, Michael Cowles (1/3/2012) at 33
[62] Deposition, Katherine Kraft, Ph.D., (2/7/2012) at 12, **Exhibit 21**
[63] *Id*. at 13, 39-40.
[64] Deposition Dr. Allison Stock (1/3/2012) at 3, **Exhibit 22**
[65] Deposition Dr. Allison Stock (1/3/2012) at 12
[66] Deposition Dr. Allison Stock (1/3/2012) at 11-12
[67] Deposition Dr. Allison Stock (1/3/2012) at 56

and by Dagg in 1992, [68] Dr. Stock did not produce a single study of Chevron employees that involve Multiple Myeloma.[69]

**Corporate Record's Custodians**

**Michael Formoso,** was designated at Chevron's 30(b)(6) corporate records custodian for topics A, B, C, D, E D, F, F (efforts to locate the following descriptions of documents found in Exhibit 1: 1, 2, 4, 7, 9, 10, 11, 12, 13, 14, 15, 17, 18, and 19) and H.

> **Topic A**: Knowledge regarding all systems, procedures, methods and/or protocols of documenting, filing, record keeping, recording and/or reporting of any documents, data or information pertaining to any and all of the equipment presently or formerly owned and/or operated by  or for  the Chevron Oronite Oak Point Plant and the Alliance Refinery, from 1982-1983.
>
> **Topic B**: Knowledge regarding the locations and/or dispositions of all files identified and/or reviewed by Chevron in connection with this case.
>
> **Topic C**: Knowledge of the efforts extended by Chevron to identify, locate and produce the documents requested in the accompanying subpoena and those requested in Plaintiffs' requests for production of documents, or any other discovery request.
>
> **Topic D**:  Knowledge of the efforts extended by Chevron to identify, locate and the information requested in plaintiffs' Interrogatories and Request for Admissions.
>
> **Topic F**: Knowledge regarding the authenticity of documents requested to be produced and knowledge of the locations or storage of any of the following categories of information or documents:  (including electronic information storage)
>
> **Topic H**: Knowledge of any database containing Chevron's historical documents concerning benzene.[70]

Mr. Formoso preparations for the deposition consisted of nothing more than reviewing the deposition notice with Chevron counsel.[71] The first time Mr. Formoso saw the Subpoena Duces Tecum was the day before the deposition.[72]  He doesn't know if Chevron

---

[68] Deposition Dr. Allison Stock (1/3/2012) at 75
[69] Deposition Dr. Allison Stock (1/3/2012) at 107
[70] Deposition Topic designation by Chevron, and Subpoena, Rec. Doc. 145-18
[71] Deposition, Michael Formoso (1/8/2012) at 3, **Exhibit 3**
[72] Deposition, Michael Formoso (1/8/2012) at 5

produced everything he found as a result of the search terms corporate legal provided.[73]   He

doesn't know how many Material Safety Data Sheets or Material Information Bulletins he

found in response to his searches for "crude oil", "gasoline", "fuel oil", "toluene" "naphtha",

or "xylene".[74]   He could not answer whether the requested material would be stored in any

other place than the database he searched.[75]

     Mr. Formoso testified that he was not asked to begin searching for documents in this

matter until January 2012.[76]   He had no information on any other efforts to search for

documents other than his own searches.[77]   Mr. Formoso testified (after prompting by Mr.

Anding), that he did not look for any Material Information Bulletins.[78]   He doesn't recall

whether he found any Safety Manuals for the Oak Point Plant. [79] He doesn't recall whether

he found any contracts between the Oil Mop and either the Alliance Refinery or Oak

Point.[80]   The archive he searched concerned paper documents deemed inactive, and he

could not provide information on where electronic databases maintained in the 1980's

would have been stored.[81]

     He was unable to provide any information concerning Chevron's efforts to identify or

locate the documents identified in the Request for Admissions directed to Chevron, other

than his own document searches.[82]   He could not describe the categories of documents he

found in his searches.[83]   He was not aware if any efforts were made to search for Safety

---

[73] Deposition, Michael Formoso (1/8/2012) at 7
[74] Deposition, Michael Formoso (1/8/2012) at 8
[75] Deposition, Michael Formoso (1/8/2012) at 10.
[76] Deposition, Michael Formoso (1/8/2012) at 13
[77] Deposition, Michael Formoso (1/8/2012) at 15
[78] Deposition, Michael Formoso (1/8/2012) at 18
[79] Deposition, Michael Formoso (1/8/2012) at 21
[80] Deposition, Michael Formoso (1/8/2012) at 24
[81] Deposition, Michael Formoso (1/8/2012) at 25
[82] Deposition, Michael Formoso (1/8/2012) at 26
[83] Deposition, Michael Formoso (1/8/2012) at 30

Manuals at the Oak Point facility or the Alliance refinery.[84] He could not recall whether he found any invoices for Oil Mop.[85] He searched for tank logs, but cannot remember if he found any.[86] He cannot remember whether he found any document in response to his searches for "Multiple Myeloma."[87]

Furthermore, in spite of Chevron's agreements and the Court's order to produce a knowledgeable representative, not only was Mr. Formoso unprepared, but counsel for Chevron repeatedly interrupted the depositions with speaking objections, coaching the witness, and in several instances actually providing Mr. Formoso's answers.[88]

**Elina Valmores,** was appointed the Chevron 30(b)(6) records custodian for certain topics. She was unprepared to provide knowledgeable responses for many of the topics designated. Ms. Valmores testified she did nothing other than meet with legal to prepare for her deposition.[89]

She searched the electronic database for terms provided by Chevron corporate legal, but could not remember what terms she searched for.[90] She doesn't recall whether she found any documents responsive to the search terms.[91] She doesn't recall whether she provided documents to corporate legal.

Ms. Valmores could not recall whether she searched for Material Safety Data Sheets for naphtha, fuel oil, toluene, xylene, crude oil and gasoline.[92] She was not aware if Material

---

[84] Deposition, Michael Formoso (1/8/2012) at 30-31
[85] Deposition, Michael Formoso (1/8/2012) at 31
[86] Deposition, Michael Formoso (1/8/2012) at 33
[87] Deposition, Michael Formoso (1/8/2012) at 35
[88] Deposition, Michael Formoso (1/8/2012) at 4:25-5:8, 6:20-23, 7:8-23; 9:16-17, 1:3 & 14-16, 13:2-14, 13:22, 16:1, 17: 16-19, 17:21-24, 18:1-4, 18:19-20, 18-24:25, 19:5-6, 22:5-7, 27:2-13.
[89] Deposition, Elina Valmores (1/8/2012) at 14, **Exhibit 2.**
[90] Deposition, Elina Valmores (1/8/2012) at 3-4, 14
[91] Deposition, Elina Valmores (1/8/2012) at 8-9
[92] Deposition, Elina Valmores (1/8/2012) at 11-12

Information Bulletin's would be stored anywhere else in the company.[93] She doesn't recall whether she was asked to search for safety training manuals.[94] She cannot recall if she found any epidemiological documents.[95]

Finally, both of Chevron's records custodians testified that they searched electronic files or databases. This testimony is inconsistent with Chevron's January 18, 2012 e-mail indicating it would cost $188,000 to search its physical files.[96] This leads to the logical conclusion that either Chevron has still not searched these files, or it mislead counsel and the Court when claiming that such costs would be incurred.

III. **CHEVRON HAS EXHIBITED A PATTERN OF OBSTRUCTIVE CONDUCT IN SIMILAR LITIGATION.**

Chevron has exhibited similar conduct in other litigation. In ***Monte McWilliams v. Exxon Mobil Corp,*** et al, 14th Judicial District Court of Louisiana, Docket No. 2009-2803 E. The Court in ***McWilliams*** granted the Plaintiffs Motion for Sanctions, and **struck Chevron' U.S.A. Inc.'s answers and defenses**, leaving only the issue of damages for trial. The matter proceeded to trial, and a verdict was rendered in favor of the Plaintiffs. The parties sought writs on this issue before the Third Circuit of Louisiana and the Louisiana Supreme Court; writs were denied by the Third Circuit on January 25, 2012 and by the Louisiana Supreme Court on January 27, 2012.[97]

CONCLUSION AND RELIEF SOUGHT

Chevron has delayed discovery, failed to obey Court Orders, failed to produce relevant document requested in discovery, failed to produce documents as Ordered by this Court, failed to

---

[93] Deposition, Elina Valmores (1/8/2012) at 13
[94] Deposition, Elina Valmores (1/8/2012) at 13
[95] Deposition, Elina Valmores (1/8/2012) at 14-15
[96] E-mail January 18, 2012, Rec. Doc. 145-7
[97] Order, Louisiana Third Circuit and the Louisiana Supreme Court, *Monte McWilliams v. Exxon Mobil Corp.,* **Exhibit 23.**

obey the Court's Orders and the Federal Rules of Civil Procedure concerning witnesses, failed to produce knowledgeable corporate representatives, and delayed in designated corporate witnesses.  In light of Chevron's continued discovery abuses, Plaintiffs request that the Court issue the following Sanctions:

1. Attorney's fees and costs associated with this Motion and  for the duplicative witness depositions. Plaintiffs requests attorney's fees of $17,096.00[98] and deposition costs for the depositions of Ron Caviler - $1376.42, and Dominick Caucibauda $1,159,72. Plaintiffs' are still waiting to receive invoices for the depositions of Gary Bowman, Roger Kinney, Albert Weller, Robert Cheng, and Chevron's 30(b)(6) records custodians, and Edward Turner.

2. Attorney's fees, and costs ( including deposition costs) for any _additional_ corporate witnesses that must be deposed and any witnesses that must be re-deposed as a result of Chevron's failure to produce documents, and failure to produce knowledgeable corporate witnesses.

3. Civil Contempt fees for failure to obey the Court's Orders, and failure to obey the subpoenas.

4. Cost of a video deposition to perpetuate Mr. Bryan Morin's testimony.  (Considering Mr. Morn's terminal illness and ill health, the delay in trial caused by Chevron's failures will require a perpetuation deposition to secure Mr. Morin's testimony for the trial which has been re-set for December, 2012.)

Plaintiffs' request the following additional relief:

5. Plaintiffs request this Court find that Chevron's failure to identify 18 witness in its Rule 26 disclosures prior to the December 9, 2012 Witness lists was in violations of the Court's Scheduling Order.

6. Order Chevron to produce all documents responsive to the subpoena within 15 days, or face additional sanctions.

7. Order an In-Camera Review of Chevron's search results responsive to the subpoena.

---

[98] See attached timesheet and invoices, **Exhibit 24**

Respectfully Submitted:

*/s/ Amber E. Cisney*
RICHARD J. FERNANDEZ, LSBN 05532
AMBER E. CISNEY, LSBN 28 821
**LAW OFFICE OF RICHARD J. FERNANDEZ, LLC**
3000 West Esplanade Avenue, Suite 200
Metairie, Louisiana  70002
Telephone: (504) 834-8500
Facsimile: (504) 834-1511
rick@rjfernandez.net
amber@amlbenzene.net
&
*s/ L. Eric Williams, Jr.*
L. ERIC WILLIAMS, JR., LSBN 26773
**WILLIAMS LAW OFFICE, LLC**
433 Metairie Rd., Suite 302
Metairie, Louisiana  70005
Telephone: (504) 832-9898
Facsimile:  (504) 832-9811
eric@amlbenzene.net

**ATTORNEY FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on all known counsel of record in this proceeding via electronic filing, facsimile transmission, hand delivery, or by U.S. mail same on this 26 th day of February, 2012.

*s/ Amber E. Cisney*
Amber E. Cisney