UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRYAN MORIN, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-45** |
| **CHEVRON U.S.A. INC., ET AL.** | **SECTION "G" (3)** |

**ORDER**

On February 29, 2012, plaintiffs' Motion for Sanctions and Adverse Inference [Doc. #145] came on for oral hearing before the undersigned. Present were Eric Williams, Richard Fernandez and Amber Cisney on behalf of plaintiffs and Gary Bezet, Gregory Anding and Stan Perry of behalf of defendant Chevron U.S.A. Inc. ("Chevron"). After the oral hearing, the Court took the motion under advisement and ordered supplemental briefing. Having reviewed the motion, the opposition, the case law and the parties' arguments, the Court rules as follows.

**I.    Background**

The complaint alleges as follows. Plaintiff Bryan Morin worked as a tank cleaner for Oil Mop, Inc. ("Oil Mop") from 1982 through 1983, during which time he cleaned tanks at defendants' facilities that contained benzene, benzene-containing products and oil spills. In October 2008, Morin was diagnosed with multiple myeloma. Plaintiff and his family ("plaintiffs") then sued defendants under product-liability law as manufacturers, distributors, sellers and suppliers of

benzene and benzene-containing products.

On October 10, 2011, plaintiffs propounded on Chevron USA Inc. ("Chevron"), the only remaining defendant, a Subpoena to Testify at a Deposition set for November 1, 2011 and a subpoena to produce documents, with a return date of October 18, 2011.  On October 26, 2011, the Court quashed the subpoena but only at that time.  The Court ordered that after further paper discovery, plaintiffs could re-propound the subpoenas on or after December 9, 2011.

## II.     The Parties' Contentions

### A.     Plaintiffs

On January 4, 2012, the Motion to Compel Deposition of Chevron U.S.A. 30(b)(6) Corporate Representatives [Doc. #79] and Chevron U.S.A. Inc.'s Motion to Quash Subpoenas Issued by Plaintiffs, and, Alternatively, Motion for Protective Order [Doc. #82] came on for oral hearing before the undersigned.

The Court granted the motion in part as outlined below:

> With regard to the issue of gasoline, defendants shall respond to plaintiffs' discovery requests as they relate to gasoline stored in small and large storage tanks, railcars and barges at the facilities at which plaintiff Bryan Morin allegedly worked for defendants.
> With regard to defendants' knowledge of the effects on health that benzene may cause, defendants shall respond to plaintiffs' discovery requests as they relate to the (1) time period between 1926 and 1983 and (2) the potential effects on health that benzene may cause through respiratory inhalation that may lead to the development of multiple myeloma or any symptoms thereof. Defendants shall also produce to plaintiff any published materials responsive to the discovery requests.
> Lastly, defendants shall provide to plaintiffs deposition dates for the records custodians no later than five (5) days from the date of this Minute Entry.

[Doc. #110 at pp. 1-2].  In addition, and before the oral hearing on January 4, 2012, Chevron agreed to the production of numerous other documents.

Plaintiffs contend that as of January 30, 2012, Chevron had still failed to produce documents

to which it did not object and that this Court ordered produced.  After Chevron informed plaintiffs that it would cost at least $188,000.00 to identify responsive documents, the parties called the Court, which informed them that the Court had ordered the documents produced, and the parties had never before addressed costs.  After a further conference with the Court, plaintiffs agreed to continue the deposition of the corporate records custodian because Chevron was unable to timely produce documents relevant to the deposition. Plaintiff did not have the documents available at three corporate depositions already taken.

Citing specific documents that allegedly address benzene and its related health effects, plaintiffs note that Chevron has produced documents relevant to this case from *Woodhouse, et al. v. Sunoco, Inc. (R&M), et al.* in the Court of Common Pleas, Philadelphia County.  The *Woodhouse* case is factually similar to this one.  Plaintiffs thus contend that it is disingenuous for Chevron to argue that it is unable to locate responsive documents.  Plaintiffs argue that Chevron acted similarly in a lawsuit in this district, *Barrois v. Fireman's Fund, et al.*  Pointing to the deposition of a corporate representative in a third litigation, plaintiffs note that his testimony indicated that Chevron has ready access to the documents that plaintiffs need produced.

Plaintiffs maintain that Chevron has still failed to produce corporate representatives for all of the deposition topics listed on the notices. On January 26, 2012, plaintiffs received an e-mail that untimely listed Steve Earl as a corporate representative.  Because earlier corporate representatives were designated for many of the topics on which Earl would testify, plaintiffs declined (but reserved their right) to take his deposition at that time.  In light of plaintiffs' reservation of rights, Chevron unilaterally cancelled the depositions of two other corporate representatives.  Chevron has now recently and untimely informed plaintiffs that three of its corporate representatives will be

toxicologists. Citing case law, plaintiffs' assert that Chevron has the responsibility to identify knowledgeable corporate representatives.

As relief, plaintiffs, pursuant to 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 37, seek the excess costs, expenses and attorneys' fees necessitated by Chevron's conduct in improperly multiplying the proceedings. Plaintiffs contend that counsel has billed approximately 39.98 hours as a result of Chevron's conduct. Plaintiff note that they have yet to receive the billings from the depositions of the duplicate witnesses.[1]

### B. Chevron

Citing case law and the federal rules, Chevron argues that a motion for sanctions is premature if the party has not filed an earlier motion to compel, ultimately prompting disobedience with the Court's order. Because this Court's January 4, 2012 Minute Entry only ordered Chevron to (1) respond to certain corporate deposition topics and document requests and (2) provide available dates for a corporate records deposition, Chevron contends that these two issues are the only ones as to which the Court might order sanctions.

Chevron asserts that it provided plaintiffs with a date for the deposition of the records custodian within five days of the Minute Entry (January 9, 2012). After the parties mutually agreed to postpone the deposition after a conference call with the Court, the deposition occurred on February 8, 2012. Chevron contends that it complied in full with its obligations under the Minute Entry. Chevron argues that plaintiffs failed to meet their burden for an award of severe sanctions because they failed to prove willful disobedience, gross indifference, deliberate callousness or gross

---

[1] In their motion here, plaintiffs also ask the Court to strike numerous witnesses and for adverse inferences against Chevron given the alleged discovery violations. The Court informed the parties that such requests are properly before the District Court and not this Court and will thus not be addressed here.

negligence.

Citing testimony from Aaron Williams, the corporate representative of Gulf Oil Corporation ("Gulf Oil"),[2] Chevron contends that plaintiffs misrepresent issues of fact to the Court and that Chevron did not list witnesses who would testify cumulatively. Chevron notes that it defends two facilities here, not just one, and has the right to list its witnesses whom it believes posses relevant information. Williams testified that Oil Mop was a "major player" at Gulf Oil's Alliance facility but only after Morin would have worked there. And the then-president of Oil Mop, Kenneth Thompson, testified that he didn't think Oil Mop cleaned tanks at the plant nor was tank-cleaning a part of Oil Mop's business at all.

Chevron maintains that it has never failed to produce knowledgeable corporate representatives. It notes that it has produced seven of them and has offered to produce an eighth. Given the vast number of deposition topics, Chevron notes that no one individual had the knowledge to respond to all of them. Chevron also notes that plaintiffs never objected to the testimony of the individuals and never moved to compel additional testimony.

Chevron contends that it made all of its witnesses available for depositions. Plaintiffs have deposed all of the witnesses. Distinguishing the case law on which plaintiffs rely, Chevron argues that it updated its initial disclosures with the supplemental witnesses before the discovery deadline. Chevron also notes that the District Court allowed the filing of its supplemental witness list. Chevron also argues that it has never concealed witnesses but has only failed to disclose witnesses from other litigation that do not possess relevant information here.

Chevron alleges that it has never failed to produce health and safety records that it produced

---

[2] Chevron is the successor in interest to Gulf Oil.

in other litigation. Because Chevron – as a massive organization – does not cross-reference document searches in other lawsuits, it contends that only one document from the Woodhouse lawsuit may be relevant here (but Shell Chemical Company – not Chevron – drafted the document.) Chevron offered to enter a stipulation with plaintiffs that would have reflected Chevron's knowledge of the health effects of benzene, but plaintiffs refused to do so.

Chevron argues that it never attempted to unilaterally cancel the depositions of Dr. Katherine Kraft and Dr. Allison Stock but only sought confirmation from plaintiffs as to the dates. Plaintiffs noticed the deposition of Stock, which occurred on January 27, 2012, but did not notice that of Kraft. Plaintiffs ultimately scheduled her deposition, which occurred on February 7, 2012.

Lastly, Chevron notes that it never asked plaintiffs to agree to pay $188,000.00 in production costs. Chevron contends that it merely informed plaintiff of an internal estimate in that amount.

### C. Plaintiffs' Reply

Plaintiffs contend that Chevron failed to produce 136 relevant health and safety documents that it produced in an earlier litigation entitled *Barrois v. Firemen's Fund*, Civ. A. No. 09-380 (E.D. La.). Plaintiffs also argue that Chevron has still failed to produce health and safety documents from 1926 to 1983 despite this Court's order to do so. Plaintiffs note that Chevron's Rule 30(b)(6) records custodian, Elina Valmores, testified that she was not asked to search for the documents identified in the *Barrois* litigation but could have done so. Valmores also testified that she was not asked to search Chevron's physical library but only its electronic database. Plaintiffs contend that Chevron has only produced documents dated after 1984.

Plaintiffs maintain that Chevron's argument that it has produced documents on a rolling basis is specious. Valmores testified that she was not asked to search for documents until late 2011, and

Michael Formoso, Chevron's other Rule 30(b)(6) records custodian, testified that he did not search for documents until January 2012. Plaintiffs argue that they have suffered prejudice because they were unable to review any documents before deposing Chevron's witnesses.

Plaintiffs also assert that only after they discovered relevant documents in another lawsuit, *Woodhouse v. Sunoco, Inc.*, No. 3557, Court of Common Pleas, Philadelphia County, Chevron produced a few of those documents. Plaintiffs contend that they have now discovered more relevant documents in the *Woodhouse* litigation that Chevron has not produced. In a status conference before the District Court, Chevron argued that plaintiffs can not identify one document that it has not produced, but plaintiffs note that Chevron never produced the 136 health and safety documents nor the documents from the *Woodhouse* litigation bates-stamped "CHV-WOOD." Plaintiffs also note that Chevron has not produced testing data or documents evaluating the benzene content of its product streams even though on the last day of discovery it produced a 1976 memorandum that discusses its plan to identify such benzene content. Plaintiffs further contend that Chevron has produced no tank logs that identify the substances in each tank even though Chevron did so in another litigation entitled *Tessitore*. Plaintiffs identify numerous other documents that Chevron produced in *Tessitore* but failed to produce here. Lastly, plaintiffs identify a 1984 document that reveals 11 cases of multiple myeloma in maintenance workers at two Chevron facilities and two unpublished studies from 1983 that Chevron failed to produce.

With regard to the 18 late-identified witnesses, plaintiffs note that one of them, Dominick Caucibauda, was deposed in an earlier suit involving exposure to benzene at a Chevron facility and that involved the same counsel here. Plaintiffs also note that Chevron identified numerous managers of its Oak Point plant in *Tessitore* but failed to do so here timely. Plaintiffs thus contend that

7

Chevron can offer no reason why it identified these witnesses after the deadline.

Citing the testimony of the corporate representatives and records custodians that Chevron has produced for depositions, plaintiffs maintain that all of them were unprepared to testify on the topics for which Chevron designated them. Pointing to similar litigation in state court entitled *McWilliams v. Exxon Mobil Corp.*, Docket No. 2009-2803 E, 14th Judicial District Court of Louisiana, plaintiffs contend that Chevron has engaged in similar behavior before. In *McWilliams*, the state court granted the plaintiff's motion for sanctions and struck Chevron's answers and defenses. Plaintiffs won that trial, and all appeals courts denied writs.

Pointing to their exhibits, plaintiffs seek $17,096.00 in attorneys' fees, $1,376.42 for the deposition of Ron Caviler, $1,159.72 for the deposition of Dominick Caucibauda, and the fees for seven other depositions that they have yet to receive. Plaintiffs also seek the costs for any further depositions of witnesses due to Chevron's failure to timely produce documents, civil contempt fees for failure to obey the Court's order and the fees for a video deposition to perpetuate Morin's testimony given that the delay in trial may result in his death before the trial occurs. Plaintiffs also ask the Court order Chevron to produce all documents responsive to the subpoena within 15 days of this Court's order and order an in camera review of Chevron's search results.

### D. Chevron's Sur-Reply

Chevron contends that since the January 4, 2012 Order, it has supplemented its production on ten separate occasions with over 2700 documents. Citing specific documents attached to plaintiff's supplemental memorandum, Chevron maintains that the documents produced by plaintiffs from other lawsuits were neither requested nor responsive to the discovery requests here. For example, Exhibit 7 to plaintiff's supplemental memorandum is a letter from the Gulf Oil Medical

Department dated November 12, 1975 that addresses six deaths from lymphoma at the Gulf Philadelphia refinery. The letter also addresses benzene exposure at that refinery. Chevron argues that such a document is not responsive given that plaintiffs sought only "Health and Safety records . . . covering Oak Points Plants and the Alliance Refinery from 1982-1983." Chevron maintains that plaintiffs should have been more specific in requesting documents. Chevron also asserts that it produced some of the documents in the spirit of cooperation despite their non-responsiveness. Chevron contends that plaintiffs themselves have failed to supplement their production of documents.

With regard to the knowledge of Chevron's corporate representatives, Chevron, citing to the testimony of its witnesses, argues that the witnesses testified only to the scope of their duties in locating any records and to nothing more. Chevron asserts that plaintiff's motion was the first time that they complained of the corporate testimony, and they thus failed to confer under Rule 37.

With regard to the allegedly late-identified witnesses, Chevron notes that the District Court allowed it to supplement its witness list two business days after the original deadline. Chevron contends that plaintiff themselves have obtained numerous affidavits from witnesses and have failed to supplement their discovery responses.

Chevron asserts that under Rule 30(b)(6), it is allowed to designate "one *or more*" witnesses to testify on its behalf. Chevron contends that its corporate witnesses were not unprepared but that plaintiffs questioned them outside the scope of their designations.

**III.   Law**

    **A.   28 U.S.C. § 1927**

28 U.S.C. § 1927 permits sanctions only when there is "evidence of bad faith, improper

9

motive, or reckless disregard of the duty owed to the court." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998). The statute provides, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Accordingly, for the Court to sanction under Section 1927, there must be a finding that the proceedings were unreasonable and vexatious. *F.D.I. C. v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994). Courts should remain mindful that sanctions under Section 1927 are "punitive in nature" and should only be awarded if a party "multiplies the proceedings . . . unreasonably and vexatiously." *Bryant v. Military Dept. of Miss.*, 597 F.3d 678, 694 (5th Cir. 2010) (citing *Religious Tech. Ctr. v. Liebreich*, 98 Fed. Appx. 979, 983 (5th Cir. 2004); *see also Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La.*, Inc., 38 F.3d 1414, 1416 (5th Cir. 1994) (holding that Section 1927 must be strictly construed so as "not to dampen the legitimate zeal of an attorney in representing his client"). This standard, which "focuses on the conduct of the litigation and not on the merits," requires "clear and convincing evidence 'that every facet of the litigation was patently meritless' and 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.'" *Id.* (quoting *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525-26 (5th Cir. 2002)) (emphasis in original). The Fifth Circuit has always counseled courts to impose these sanctions with caution. *Calhoun*, 34 F.3d at 1297.

### B.     Federal Rule of Civil Procedure 37

In contrast, Rule 37 applies to circumstances in which a party has violated a court order, such as a discovery ruling. Fed. R. Civ. P. 37(b)(2); *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994). The Court's own authority encompasses its "inherent power to impose sanctions for abuse

of the judicial system, including the failure to preserve or produce documents." *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993) (stating that this power stems from a court's authority to manage its own affairs).

Rule 37 authorizes courts to appropriately respond to and deal with parties who have disobeyed discovery orders. *Chilcutt v. United States*, 4 F.3d 1313, 1319–1320 (5th Cir. 1993). A "court's discretion in fashioning appropriate sanctions for parties who disobey their orders is quite broad, though not unlimited." *Id.* If a court finds sanctionable conduct under Rule 37, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); *see also* Fed. R. Civ. P. 37(d)(1)(A)(ii), (c)(1).

Sanctions may be imposed on a party that, without substantial justification, fails to disclose information required by Rule 26(a) or 26(e)(2). *In re September 11th Liab. Ins.*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) (citing Fed. R. Civ. P. 37(c)(1)). A failure to disclose under Rule 37 includes not only spoliation of evidence but also a party's untimely production of documents and information required to be produced. *Id.* at 125; *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2d Cir. 2002).

In addition, "[a] party's failure to supplement an earlier discovery response is sanctionable under Rule 37(c)." *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 74 (W.D.N.Y. 2011) (quoting James W. Moore, et al., 6 Moore's Federal Practice, Civil § 26.132 (3d ed. 1997)); *see Anderson v. Cryovac, Inc.*, 862 F.2d 910, 929 (1st Cir. 1988) ("once a proper discovery request has been seasonably propounded, we will not allow a party sentiently to avoid its obligations by . . .

failing to examine records within its control"); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (holding that a party has an obligation to conduct a reasonable inquiry in the course of responding to requests for production).

The Fifth Circuit has noted that sanctions under Rule 37 are "predicated upon the presence of such factors as willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence." *Dorsey v. Academy Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970); *see also Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) (reasoning that "sanctions are proper upon a finding of willfulness, bad faith, or fault on the part of the noncomplying litigant.").

**IV.     Analysis**

At this point in time, the Court can not find that sanctions are warranted under either Section 1927 or Rule 37.  The Court has long wrestled with this decision because more than one shade of gray colors this dispute.  The Court has reviewed the voluminous exhibits that plaintiffs and Chevron have attached to their numerous memoranda.  With regard to the Court's inherent authority to sanction under Section 1927, that review reveals no clear and convincing evidence that every facet of the litigation has been patently meritless not has it revealed evidence of bad faith, improper motive, or reckless disregard to the duty owed the Court.

Neither has the review revealed that Chevron explicitly violated this Court's January 4, 2012 Order through willful disobedience, gross indifference to the right of the adverse party, deliberate callousness or gross negligence.  And while the Court's review does reveal a rather dilatory – and erratic – production of documents on the part of Chevron, the Court can not state that such production warrants sanctions under the factors here.  Both sides present legitimate legal arguments

12

to support their positions.

As noted above, Rule 37 applies to circumstances in which a party has violated a court order, such as a discovery ruling. Fed. R. Civ. P. 37(b)(2); *Brandt*, 30 F.3d at 756. The only order at issue here is the January 4, 2012 Order. That order required Chevron to produce certain documents relative to (1) gasoline stored, (2) Chevron's knowledge of the effects on health that benzene may cause between 1926 and 1983, and (3) the potential effects on health that benzene may cause through respiratory inhalation. To demonstrate that Chevron failed to comply with this Court's order, plaintiffs attach to their motion Exhibits 8 through 16 and numerous other exhibits to their reply memorandum as examples of documents that Chevron should have produced.

Chevron contends that such exhibits are non-responsive to plaintiffs' discovery requests. As plaintiffs themselves note, they sought only "Material Safety Data Sheets for gasoline, crude oil, fuel oil, naphtha, toluene, and xylene for the Chevron Oronite plant and Gulf Alliance Refinery from 1982 to 1983." [Pls.' Mem Supp. at p. 1]. And Chevron notes that plaintiffs' requests themselves sought "Health and Safety records covering . . . Oak Point Plants and the Alliance Refinery from 1982-1983." [Chevron's Supp. Mem. at pp. 2-3].

It is true that the exhibits fall outside the date range sought by plaintiffs. And while the date range as it pertains to Chevron's knowledge of the potential effects on benzene is much broader, the Court was hard pressed – except as to a few documents, as discussed below – to find any information in the documents that would be relevant to anyone's knowledge of such effects. While the exhibits themselves discuss benzene and the preventative measures that employees must take when working with it and similar substances, the majority of the exhibits do not explicitly address benzene and any potential health risks.

The Court finds, however, that certain exhibits – such as Exhibits 8 and 9 attached to plaintiffs' reply memorandum – should have been produced. While Chevron argues that the exhibits are not responsive to plaintiffs' discovery requests, the Court finds that they are potentially relevant to Chevron's knowledge of the potential health effects of benzene between 1926 and 1983. Chevron contends that such exhibits are non-responsive because they address different refineries and/or leukemia, and not multiple myeloma. However, this Court's January 4, 2012 Order did not limit the production of documents – as they pertain to Chevron's knowledge between 1926 and 1983 – to certain refineries and/or to multiple myeloma. Nonetheless, the Court recognizes that as alleged by plaintiff, he worked only at certain plants and has multiple myeloma, an arguably limiting factor to the production of relevant documents.

The Court thus finds that Chevron would have had an arguably valid legal argument for failing to produce such documents should a motion to compel have come before it. And while the Court refuses to hold that Chevron would have prevailed by advancing such an argument, the Court would find it difficult to hold that Chevron acted through willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence with regard to the Court's January 4, 2012 Order. The Court cautions Chevron, however, that the January 4, 2012 Order is not as narrowly-tailored as it interprets it. Should Chevron have sought a more narrowly-tailored order, it should have moved the Court to amend it.

With regard to the depositions, the Court finds similarly. Having reviewed the arguments of the parties and the deposition testimony of the corporate representatives attached to the parties' various pleadings, the Court finds that Chevron complied with this Court's January 4, 2012 Order which required *only* that Chevron provide dates for the depositions within five dates from the date

of the order. Chevron did so. And while the depositions did not occur as quickly as plaintiffs would have liked, this Court's order did not set forth an explicit date by which the depositions had to occur. The Court can not find that Chevron is thus subject to sanctions under Rule 37 and declines to sanction it under its inherent authority under Section 1927.

## V.     Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion for Sanctions and Adverse Inference [Doc. #145] is DENIED.

New Orleans, Louisiana, this 11th day of June, 2012.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**